**Larue SAVAGE, Assessor, Greene County, Missouri, Appellant,**

v.

**STATE TAX COMMISSION of MISSOURI, et al., Respondents.**

No. 67981.

Supreme Court of Missouri, En Banc.

Dec. 16, 1986.

Theodore L. Johnson, III, County Counselor, John W. Housley, Asst. County Counselor, Springfield, for appellant.

David J. Newburger, Susan Spiegel, Jerome Wallach, St. Louis, for respondents.

ROBERTSON, Judge.

Respondent taxpayers challenged the assessment of their real property in Greene County for tax years 1980 and 1981. The State Tax Commission (the "Commission") found that respondents suffered discriminatory assessment of their real property and ordered the assessor, appellant herein, to lower the assessment of respondent's properties to the average level of assessment within the county. Appellant sought judicial review in the circuit court; the circuit court affirmed the Commission.

On appeal to the Court of Appeals, Southern District, the judges of that court recommended that this Court transfer the case prior to opinion because of its general interest and importance. Rule 83.06. We granted transfer and have jurisdiction. Mo. Const. art. V, § 10.

At issue in this appeal are questions regarding the sufficiency of the evidence upon which the Commission based its decision and the appropriate legal standard upon which the Commission can order the assessor to lower an assessment of a taxpayer's property. We affirm the judgment of the circuit court.

I.

The relevant facts are not in dispute. Pursuant to § 163.011(4), RSMo 1978, Commission employees conducted ratio studies for tax years 1980 and 1981 for the purpose of determining the equalized assessed valuation of real property in order to distribute funds to school districts in Greene County. The ratio studies appraised 231 parcels (1980) and 204 parcels (1981) of Greene County real estate selected at random by a computer program. The study found that the average assessment rate for the randomly selected parcels was 20.9 percent of fair market value in 1980 and 20.5 percent of fair market value in 1981.

Respondent taxpayers, apparently aware of the results of the ratio studies, claimed that their property was assessed at 33⅓ percent of fair market value and protested their assessments to the State Tax Commission. The Commission consolidated the cases and conducted an evidentiary hearing in April, 1982. The parties (taxpayers and assessor) stipulated to the true value in money of respondents' properties. Respondents contended that the ratio studies establish a disparity between the average level of assessment in Greene County and the assessment of their properties and that such a disparity violates § 137.115(1), RSMo 1978, the uniformity provision of Mo. Const. art. X, § 3, and the equal protection clause of U.S. Const. amend. XIV.

The Commission rendered separate decisions and orders in which it made identical findings that the ratio studies established the average level of assessment of real property in Greene County for 1980 and 1981 at 20.9 and 20.5 percent of true value in money respectively. The Commission further found that appellant had assessed the respective respondent taxpayers' property at the rate of 33⅓ percent of its true value in money. The Commission ordered the assessor to lower the assessment on respondents' Greene County properties to the average level of assessment for real property in Greene County as determined by the ratio studies. The Commission also ordered appellant to refund the taxes paid in excess of that amount.

Appellant sought review in the Circuit Court of Greene County. The Circuit Court consolidated the separate appeals for review. After considering the arguments of the parties, the Circuit Court affirmed the decision of the Commission.

II.

■ Our review of the Commission's decision is ordinarily limited to whether that decision is "supported by competent and substantial evidence upon the whole record or whether it was arbitrary, capricious, un-

reasonable, unlawful or in excess of its jurisdiction." *Evangelical Retirement Homes of Greater St. Louis, Inc. v. State Tax Commission,* 669 S.W.2d 548, 552 (Mo. banc 1984); § 536.140.2, RSMo 1978. In matters of property tax assessment, this Court has acknowledged "the wisdom of the General Assembly in providing an administrative agency to deal with this specialized field." *State ex rel. Cassilly v. Riney,* 576 S.W.2d 325, 328 (Mo. banc 1979). Thus, we recognize that the courts may not assess property for tax purposes, *Drey v. State Tax Commission,* 345 S.W.2d 228, 238–9 (Mo.1961), that proper methods of valuation and assessment of property are delegated to the Commission, *C & D Investment Co. v. Bestor,* 624 S.W.2d 835, 838 (Mo. banc 1981) and that on review, "[t]he evidence must be considered in the light most favorable to the administrative body, together with all reasonable inferences which support it, and if the evidence would support either of two opposed findings, the reviewing court is bound by the administrative determination." *Hermel, Inc. v. State Tax Commission,* 564 S.W.2d 888, 894 (Mo. banc 1978) (citation omitted). When read together, our cases demonstrate that this Court is loathe to substitute its judgment for the expertise of the Commission in matters of property tax assessment. Absent clear abuse, we will "stay our hand[s]." *Pierre Chouteau Condominiums v. State Tax Commission,* 662 S.W.2d 513, 517 (Mo. banc 1984) (Blackmar, J. concurring).

**A.**

Several of appellant's points on appeal appear to constitute an attack on the use of ratio studies generally and the use of these ratio studies particularly as a basis for the Commission's order. Appellant cites *May Department Stores Co. v. State Tax Commission,* 308 S.W.2d 748 (Mo.1958), as authority for "rejecting Commission ratio studies ... as evidence of the general level of assessment within a county."

■ It would serve little purpose to burden this opinion with a lengthy explanation of our understanding of the holding in *May Department Stores.* It is sufficient to say that that case does not announce a per se rejection of the use of properly conducted ratio studies to prove either the average level of assessment or discrimination in an individual case.[1] Even if *May Department Stores* announced such a rule, as appellant argues, we now hold that properly conducted ratio studies are admissible for purposes of proving both the average level of assessment and discrimination in individual cases.

In *State ex rel. Independence School Dist. v. Jones,* 653 S.W.2d 178, 183 (Mo. banc 1983), this Court described the evolution of ratio studies in this state.

In 1975, State Auditor George Lehr conducted a tax ratio study as part of an audit of the State Tax Commission and determined that the ratio of assessed value to true value for real property varied widely throughout the state. His report

---

**1.** *May Department Stores* cites with approval *St. Louis-San Francisco Ry. Co. v. Arkansas Public Service Commission,* 227 Ark. 1066, 304 S.W.2d 297, 304 (1957). "[T]he Arkansas Court refused to accept a *similar ratio study* as evidence of the actual average percentage of assessments to true value, referring to it as 'a sample check or a series of spot checks of a limited number of ad valorem property assessment,....'" [Emphasis added.] *May Department Stores,* 308 S.W.2d at 761–2.

The ratio study condemned in *Arkansas Public Service Commission* was prepared by the Missouri Arkansas Association of Tax Representatives, an association composed of tax representatives of various utilities "all of whom are interested in seeing that their property is not over-assessed." *Arkansas Public Service Com-*

*mission,* 304 S.W.2d at 304, n. 9. It appears from the language of *May Department Stores* that "a similar ratio study," *i.e.,* a study prepared by a private association, was at issue. *See Foster Brothers Manufacturing Co. v. State Tax Commission,* 319 S.W.2d 590, 592–3 (Mo.1958).

The Arkansas Supreme Court did not condemn all ratio studies. In its opinion it noted that the Act of Arkansas No. 153 of 1955 required the Arkansas Public Service Commission to prepare a sales ratio study. The Court stated, "[u]ntil a complete study is shown to have been made, we think it improper to allow a partial study...." *Arkansas Public Service Commission, supra,* 304 S.W.2d at 304. Thus, we read *May Department Stores* to condemn only those ratio studies which are improperly conducted.

caused a stir and in 1977 a special subcommittee was established in the State House of Representatives to study the situation. The subcommittee held hearings during which commission procedures for conducting ratio studies of real property were described in detail. Thereafter, the tax commission acting with the subcommittee and House and Senate Appropriations Committees developed the procedures used in today's ratio studies of real property assessments. Given the careful attention which the Commission and the legislative branch have given ratio studies as a means of discovering "average true value ratios to be used ... in determining the equalized assessed valuation ..." § 163.033, RSMo 1978, we cannot agree with appellant that ratio studies are per se inadmissible for purposes of challenges to individual assessment.

**B.**

We turn now to appellant's attack on the validity of the ratio studies employed in this case. Appellant claims that ratio studies prepared pursuant to § 163.011(4) are not substantial evidence of the general level of assessment in Greene County. Appellant further argues that these ratio studies are not statistically representative of the general mass of real property in the county and are, therefore, not substantial evidence.

**1.**

Section 163.011(4) directs the Commission to provide the Department of Elementary and Secondary Education with the percent of true value actually assessed in a given county. The Commission determines this percentage by conducting a ratio study within that county. *See, Independence School District, supra.* Appellant argues that because the purpose of a § 163.011(4)

ratio study is not "to determine values of property within a particular county in individual appeals before the State Tax Commission ... [the use of such ratio studies] exceeds § 163.011(4)'s statutory purpose and intent."

 Appellant attacks not the accuracy of ratio studies prepared pursuant to § 163.011(4), but their use before the Commission in matters of individual assessment. The germane inquiry is whether the ratio studies accurately find the average level of assessment within Greene County. The mere fact that a ratio study is prepared for purposes of equalizing property assessment within school districts does not as a matter of law render such a study incompetent or insubstantial for purposes of determining the average level of assessment within a county. Section 163.011(4) does not preclude the use of the ratio studies for the purposes employed here. The Commission admitted the studies into evidence in a manner consistent with § 536.-070(11), RSMo 1978. The point is denied.

**2.**

The evidence concerning the ratio studies consisted of the testimony of Johnny Jones, who conducted the assessment survey in Greene County; Jim Follina, his supervisor who reviewed Mr. Jones' findings and who was in charge of developing the computer program which chose the properties to be assessed in the survey; and Fred Wagner, the expert called by the assessor to challenge the validity of the ratio study. The transcript indicates that the Commission carefully weighed the testimony of the experts presented by the parties. We defer to the Commission's ability to weigh the credibility of witnesses.[2] *St. Louis County v. State Tax Commission,* 406 S.W.2d

---

**2.** That the Commission chose to disbelieve the testimony of Mr. Wagner on the validity of the ratio studies is understandable. Although Mr. Wagner is a recognized expert in real estate appraisal, he has no training in statistical analysis. His testimony is most revealing in this regard when he testified as follows:

 Q: [A]m I correct in having reviewed your qualifications and not having found any par-

ticular training in the field of statistical analysis?
 A: No direct training in statistical analysis, no.
 Q: Do you hold any degrees or awards or titles or designations with respect to statistical analysis?
 A: No, I do not.

644, 649 (Mo. banc 1966); § 536.140.3, RSMo 1978.

We have reviewed the transcript and find that no testimony was introduced by appellant to challenge the assessed valuations of the individual properties contained in the ratio studies. The Commission found that appellant,

> presented no countervailing evidence which would indicate that the studies prepared by the Commission or under its direction were inaccurate or tended to produce incorrect results. [Appellant] did not produce one shred of evidence concerning the assessment level in Greene County as of the pertinent day.

■ Appellant argues that his assessments are presumed correct. *Cupples Hesse Corp. v. State Tax Commission*, 329 S.W.2d 696, 700 (Mo.1959). Our cases hold that once evidence of unlawful discrimination is introduced, however, the presumption in favor of the assessor ceases to exist. *Koplar v. State Tax Commission*, 321 S.W.2d 686, 693 (Mo.1959). The introduction into evidence of these ratio studies constitutes sufficient evidence to vitiate the presumption in appellant's favor.

■ Further, we believe that these ratio studies are substantial evidence of the average level of assessment within Greene County. Substantial evidence is "that evidence which, if true, 'has probative force upon the issues ...,' and from which the trier of fact can reasonably decide the case on the fact issues." *Cupples Hesse*, 329 S.W.2d at 702. Our review of the evidence indicates that the ratio studies meet this test.

### 3.

■ Appellant's argument that the statistical samples from which the ratio studies derived their result are not representative of the general mass of real property in the county is equally without force. The Commission heard evidence that the sample size exceeded the minimum number considered acceptable by the International Association of Assessing Officers. Given that "[m]ethods of valuation and assess-

ment of property are matters delegated to the expertise of the administrative agencies by the legislature." *C & D Investment Co. v. Bestor*, 624 S.W.2d 835, 838 (Mo. banc 1981), we are not persuaded that the Commission, after considering the evidence before it, erred in accepting the ratio studies as competent and substantial evidence of the average assessment within Greene County for the tax years in question.

### C.

Appellant next asserts that the members of the Commission were "biased and had prejudged the issue relating to the competency and accuracy of the ratio study results because its own staff members conducted the study and Commission members had previously certified the results are accurate." Appellant introduced no evidence of bias or prejudice on the part of the Commissioners at the hearings. Instead, he now invites this Court to find bias as a matter of law because the Commissioners have fulfilled their statutory duty in arranging for, ordering the performance of and certifying the results of the ratio studies at issue here.

■ Our review of the transcript reveals that the Commissioners paid careful attention to the manner in which these ratio studies were conducted. It indicates that these Commissioners were willing to consider the propriety of the studies anew, based on the evidence submitted by the parties. The transcript further reveals that the proceedings before the Commission were conducted in accordance with fundamental principles of justice.

■ We presume the Commissioners' understand the important responsibilities entrusted to them. In the absence of clear and convincing proof, we will not presume that they have prejudged the evidence, abandoned their duties or violated their oaths of office. *Moore v. Board of Education of Special School District of St. Louis County*, 547 S.W.2d 188, 191–2 (Mo. App.1977).

In sum, we find no violation of appellant's due process rights. The point is without merit and is denied.

## III.

### A.

We come finally to examine the legal grounds upon which the Commission may order an adjustment in a property assessment. The Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." In 1980, Mo. Const. art. X, § 3, required that "[t]axes ... shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax."[3] Section 138.430, RSMo 1978, directs the Commission to "correct any assessment which is shown to be unlawful, unfair, improper, arbitrary or capricious."

Appellant argues that the Commission must find intentional discrimination as a condition precedent to ordering a taxpayer's assessment lowered. That proof of intentional discrimination provides a sufficient predicate for lowering an assessment is clear; our cases hold that acts (or failures to act) which have the effect of intentional discrimination violate the federal and state constitutions, as well.

The seminal case is *Sunday Lake Iron Co. v. Wakefield Tp.*, 247 U.S. 350, 38 S.Ct. 495, 62 L.Ed. 1154 (1918). The United States Supreme Court held that constitutionally condemned discrimination must be shown "by something which *in effect* amounts to an intentional violation of the essential principle of practical uniformity." *Id.* (Emphasis added.) *Accord, Sioux City Bridge Co. v. Dakota County, Neb.*, 260 U.S. 441, 447, 43 S.Ct. 190, 192, 67 L.Ed. 340 (1923); *Sperry Corp. v. State Tax Commission*, 695 S.W.2d 464, 467 (Mo. banc 1985). Based on the language of *Sunday Lake Iron* this Court has found that the intentional act of an assessor in assessing certain types of property at a higher rate than other property within the same class violates the constitutional requirement of uniformity. *Koplar v. State Tax Commission*, 321 S.W.2d 686, 695 (Mo. 1959).

Contrary to Appellant's argument, however, we have held that an assessor's failure to act may have the effect of an intentional violation of the essential principle of practical uniformity.

> If the persons charged with making this assessment refused to assess [the taxpayer's] property in proportion to its value and in uniformity with all other taxable property ..., they are presumed to have known that such assessment would be in violation of sections 4 and 3 respectively, of article 10 of the Constitution of Missouri, and would result in unlawful discrimination....

*Jefferson City Bridge & Transit Co. v. Blaser*, 318 Mo. 373, 300 S.W. 778, 785 (1927).

Recognizing the import of the "in effect" language of *Sunday Lake Iron, Cupples Hesse, supra,* summarized the nature of the constitutionally required evidence as follows:

> A mere overvaluation of a specific property does not establish a discrimination in the absence of a showing of an intentional plan of discrimination or a showing that there is an undervaluation in the average assessment, or that other property generally is undervalued [citation omitted].... It is sometimes stated that the assessment of [the taxpayer's] property must, *in the absence of an intentional plan or design of discrimination,* be so grossly excessive "as to be entirely inconsistent with an honest exercise of judgment." *St. Louis Electric Bridge Co. v. Koeln,* 315 Mo. 424, 287 S.W. 427, 429 (1926). (Emphasis added).

*Id.* at 700.

The standard announced in *Cupples Hesse* is still appropriate. By requiring that the level of an assessment be so gross-

---

**3.** In 1982, art. X, § 3 was amended to provide: "[t]axes ... shall be uniform upon the same class or subclass of subjects within the territorial limits of the authority levying the tax."

ly excessive as to be inconsistent with an honest exercise of judgment in cases in which intentional discrimination is not shown, the courts and the Commission refrain from correcting assessments which reflect no more than de minimus errors of judgment on the part of assessors. *Sunday Lake Iron, supra.* Such a standard recognizes that "[w]hile practical uniformity is the constitutional goal, absolute uniformity is an unattainable ideal." *Justus v. Board of Equalization of Kootenai County*, 101 Idaho 743, 620 P.2d 777, 781 (1980); *Sperry Corp. v. State Tax Commission*, 695 S.W.2d 464, 468–9 (Mo. banc 1985).

■ Here, based on the whole record, and on competent and substantial evidence, the Commission found that the average assessment level for Greene County for the 1980 tax year was 20.9 percent and 20.5 percent for tax year 1981. Respondents' properties were assessed at 33⅓ percent in those years. Such a disparity is so grossly excessive as to be entirely inconsistent with an honest exercise of judgment and has the effect of intentional discrimination. The Commission was amply justified in determining that the difference between the average assessment level for the county and the assessment level of respondents' properties is unconstitutionally discriminatory.

### B.

Appellant next contends that because the Commission did not find a common level of assessment in Greene County, it could not order respondents' assessments lowered to the average level of assessment found by the ratio studies. The "common level of assessment" has been defined as a single ratio of true value used in assessing each property in a taxing district. *Twp. of North Bergen v. Venino*, 45 N.J.Super. 143, 131 A.2d 792, 794 (N.J.App.1957). The "average level of assessment" means the "arithmetical mean of the varying percentages of true value applied by ... the assessor in assessing properties within a taxing district." *Id.*

■ A taxpayer has the right to have his "assessment reduced to the percentage of that value at which others are taxed...." *Sioux City Bridge Co. v. Dakota County, Neb.*, 260 U.S. 441, 446, 43 S.Ct. 190, 192, 67 L.Ed. 340 (1923); *Breckenridge Hotels Corp. v. Leachman*, 571 S.W.2d 251, 252 (Mo. banc 1978). *See also Drey v. State Tax Commission*, 345 S.W.2d 228, 238 (Mo.1961) (Taxpayer's assessed valuation should be set at the assessment "placed upon the general mass of other taxable property in the county.") Appellant argues that these cases require that if a reduction be made, it must be made to the common level of assessment. It is not entirely clear from the language of these cases that a reduction to the common level of assessment (as opposed to the average level of assessment) is mandated.

We understand from appellant's argument that reassessment is now completed in Greene County. We further understand that reassessment was not completed for the tax years at issue in this case. The Commission expressly found that no common level of assessment existed in Greene County for the tax years in question. This is an expected result of a failure to reassess. "[E]xcept where a municipality has made a complete revaluation, parcel by parcel ..., a common level ... cannot readily be shown if indeed one exists." *In Re Appeals of Kents 2124 Atlantic Ave., Inc.*, 34 N.J. 21, 166 A.2d 763, 766 (1961).

We believe that the average level of assessment found by the ratio studies for 1980 and 1981 provides sufficient evidence of the level at which other taxpayers similarly situated were assessed to support the reduction in these taxpayers' assessments ordered by the Commission. *In Re Appeals of Kents 2124 Atlantic Ave., Inc.*, *supra*, 166 A.2d at 768.

### IV.

The judgment of the circuit court affirming the decision of the State Tax Commission is affirmed.

All concur.