WESTWOOD PARTNERSHIP, et al., Respondents,

v.

Maurice M. GOGARTY, County Assessor, Appellants,

and

State Tax Commission of Missouri, Douglas W. Burnett, Bruce E. Davis, and Sam D. Leake, Defendants.

Norman Ellinwood, et al., Respondents,

v.

Mary King, City of St. Louis Assessor, Appellant.

and

State Tax Commission of Missouri, Douglas W. Burnett, Bruce E. Davis, and Sam D. Leake, Defendants.

Pine King Associates, L.P., Respondent,

v.

Mary King, City of St. Louis Assessor, Appellant.

and

State Tax Commission of Missouri, Douglas W. Burnett, Bruce E. Davis, and Sam D. Leake, Defendants.

Nos. ED 80647, ED 80846, ED 80847.

Missouri Court of Appeals, Eastern District, Division Three.

Jan. 28, 2003.

Application for Transfer to Supreme Court Denied April 2, 2003.

Application for Transfer Denied May 27, 2003.

---

1. Personal Representative's motion for frivolous appeal damages pursuant to Rule 84.19 is denied.

Patricia A. Hageman, Donald G. Dylewski, Robert J. Droney, St. Louis, MO, for appellant.

James C. Owen, Katherine S. Walsh, Chesterfield, MO, James P. Gamble, St. Louis, MO, for respondent.

CLIFFORD H. AHRENS, Judge.

The St. Louis County Assessor ("County Assessor") and the City of St. Louis Assessor ("City Assessor") respectively appeal from the judgments of the Circuit Court of St. Louis County and of the Circuit Court of the City of St. Louis. The county circuit court ordered that the sixty-six cases set out in Appendix A to its judgment ("Appendix A cases") be remanded to the State Tax Commission ("Commission")

with directions to enter decisions in favor of Westwood Partnership et al. ("taxpayers") classifying the properties listed in Appendix A as "residential property" for tax purposes. The county circuit court also ordered that the cases set out in Appendix B to its judgment be remanded to the Commission to consider all evidence of discrimination based on lack of uniformity and equalization of property taxes.[1] The city circuit court ordered that the decisions of the Commission and the Commission hearing officer relating to taxpayers' properties in the City of St. Louis ("City") at issue be reversed, and remanded the cases to the Commission with directions to reassess those properties as residential for purposes of levying property taxes thereon.

These cases represent the vestiges of the so-called "rule of four," which refers to the definition of "residential property" contained in Section 137.016.1(1) RSMo 1994.[2] The Missouri Supreme Court in *Associated Industries v. State Tax Commission*, 722 S.W.2d 916 (Mo. banc 1987), *appeal dismissed sub nom. Albertus v. State Tax Commission of Missouri*, 483 U.S. 1014, 107 S.Ct. 3254, 97 L.Ed.2d 754 (1987), found that it was unable to say that the legislature lacked any rational basis for enacting the statute, and that it was constitutional on its face. However, it was readily apparent that the "rule of four,"

---

**1.** The county circuit court stated that taxpayers were entitled to have the properties set out in Appendix B classified entirely as residential rather than as commercial, but noted that the County Assessor and other respondents had not had an opportunity to present evidence on the issue of discrimination based on lack of uniformity and equalization, and so remanded the cases to the Commission.

**2.** Section 137.016.1(1) defined residential property as:
"all real property improved by a structure which is used or intended to be used for

residential living by human occupants and which contains not more than four dwelling units or which contains single dwelling units owned as a condominium or in a cooperative housing association or an independent living facility for the elderly."
RSMo (1994). This definition of residential property became effective in 1985. The "rule of four" was eliminated in 1995 by the legislative amendments to Sections 137.016.1(1) and 137.016.3 RSMo (Supp.1995). All other statutory citations are to RSMo (1994) unless noted otherwise.

while apparently simple to state, was difficult to apply in practice. In several subsequent opinions the Supreme Court clarified the "rule of four," effectively carving out significant exceptions to the rule.

In 1989 the Supreme Court held that the State Tax Commission could not instruct county assessors to consolidate structures on a single parcel of land or contiguous parcels of land owned by the same owner in order to classify the property as commercial. *Rothschild v. State Tax Commission of Missouri*, 762 S.W.2d 35 (Mo. banc 1988). The Supreme Court further stated that the language of Section 137.016 plainly showed a legislative intent that the focus of the statutory classification was on each individual structure and not on the number of structures on a parcel, its location, or the identity of the owner. *Id.* at 37.

Several years later, the Supreme Court held that buildings that were physically connected were separate structures for purposes of Section 137.016.1(1) when they were not interdependent. *Morton v. Brenner*, 842 S.W.2d 538, 542 (Mo. banc 1992). Structures were held to be separate if the connecting walls were "structural," which ran continuously from the roof to the basement foundation with no structure-to-structure openings, and the walls were load or weightbearing. *Id.*

In the last major case involving Section 137.016.1(1), the Supreme Court held that apartment complexes held in the condominium form of ownership were "residential property" under Section 137.016.1(1), even if one party owned all of the condominium units and operated the property "in a manner typical of an income-generating apartment complex." *Alpha One Properties, Inc. v. State Tax Commission of Missouri*, 887 S.W.2d 390, 391–92 (Mo. banc 1994). All the taxpayer had to do in that case to avoid paying taxes at the commercial rate was merely to file a condominium declaration pursuant to statute. *Id.* at 392. The Supreme Court noted that if the assessment system had loopholes, major or minor, the Court could not judicially legislate them away, but rather had to presume that the legislature intended such, or if not, it was the duty and function of the legislature to take corrective action, not the courts. *Id.* The legislature subsequently eliminated the "rule of four" by amendment in 1995. Sections 137.016.1.(1) and 137.016.3 RSMo (Supp.1995).

Taxpayers are the owners of apartment buildings in the City and in St. Louis County. For the period from 1989 through 1994 certain properties of taxpayers were classified as commercial property under the "rule of four" definition contained in Section 137.016.1(1), rather than as residential property. For each year in the period, taxpayers appealed the classifications of their properties to the appropriate Boards of Equalization ("Boards") of St. Louis County and of the City. Following the decisions from the Boards, taxpayers then appealed the assessments and classification of their properties to the Commission.

In sixty-two of the cases heard by the St. Louis County Board of Equalization, a majority of the members of the Board attended each hearing, as taxpayers had requested. In those sixty-two cases a majority of the Board wrote, signed, and issued a decision, but it was a different majority from that present at the respective hearings. Of the two Board members that issued the decision, one had attended the hearing and the other had not. Due to the lack of recordkeeping, the latter Board member had no written or recorded account of the hearing to consider in making his or her decision. In four additional cases involving taxpayers that were heard by the Board, only one member wrote,

signed, and issued the decision on the case, so that the decision was not issued by a majority of the Board.[3] These sixty-six cases ("Appendix A cases") were among those appealed to the Commission.

Taxpayers asserted several general grounds to the Commission for reversing the St. Louis County Board of Equalization's decisions: First, they claimed that they were entitled to prevail in the Appendix A cases because the Board's decisions had not been made by the same majority of the Board that heard each case; second, they asserted that some of the properties should have been classified as residential rather than commercial under Section 137.016.1(1) due to their structure; and third, they argued that all of the properties of taxpayers should be classified as residential due to unconstitutional discrimination resulting from the lack of uniformity of assessment. Discovery took place and various pre-hearing proceedings were held. The Commission denied taxpayers' motion for summary judgment regarding the alleged procedural errors in the Appendix A cases. The Commission ordered taxpayers to make an offer of proof. The Commission hearing officer reviewed taxpayers' proposed evidence at a pre-hearing conference, and concluded that taxpayers had no admissible evidence, and excluded the evidence proffered by taxpayers. The Commission subsequently affirmed the decisions of the Boards.

Taxpayers thereafter appealed the decisions of the Commission to the appropriate circuit courts. The St. Louis County Circuit Court found that the St. Louis County Board of Equalization did not comply with the statutory requirements of Section 138.135.3 RSMo and Section 138.040 RSMo regarding Board hearings and decision-making. The court further determined

that as a consequence of the Board's failure to comply with the procedural requirements of these statutes that taxpayers automatically should have prevailed in their appeals to the Board pursuant to Section 138.135.3, and there was no need for taxpayers to appeal to the Commission. The court remanded the Appendix A cases to the Commission with directions that it enter decisions in favor of taxpayers and to classify the properties as residential. In examining the constitutional challenges, the court determined that St. Louis County was the authority levying the taxes, but that the Commission had to consider intra-county uniformity and inter-county equalization as well, and that taxpayers had a right to present evidence regarding both. The court considered taxpayers' offer of proof, which consisted of the evidence excluded by the Commission, and found that taxpayers "adequately present claims of discrimination due to lack of uniformity and equalization[,]" which the Commission should have considered. The court also found that County Assessor had the burden of proof regarding the classification of taxpayers' properties as commercial. The court remanded the non-Appendix A cases to the Commission for consideration of all evidence of discrimination.

In the cases before the Circuit Court of the City of St. Louis, the court found that the Commission "had no administrative discretion to exercise, but was limited to determining whether *in fact* assessment practices differed between similarly situated counties in Missouri, with regard to property containing more than four dwelling units." The court determined that the State of Missouri was the territorial taxing jurisdiction, that the Commission knew that there was a lack of uniformity in assessment standards among the various

---

**3.** There is no evidence as to how many of the St. Louis County Board of Equalization members were present at the hearings in these four cases.

counties of Missouri resulting in discrimination towards a large class of property owners over a long period of time and did not correct it, such that the Commission intentionally discriminated against taxpayers. The court ordered that taxpayers were entitled to prevail on the basis of their Equal Protection claims, reversed the Commission's previous orders, and remanded to the Commission with directions to reassess taxpayers' properties at issue in the City as residential for the purposes of levying real property taxes thereon.

The County Assessor and the City Assessor appeal from these judgments, which have been consolidated on appeal.

■ To facilitate analysis, we address the County Assessor's points on appeal out of order. In his second point, County Assessor asserts that the trial court erred in reversing the Commission's decision and determining that taxpayers should have automatically prevailed in the Appendix A cases based on violation of the majority requirements of Sections 138.135.3 and 138.040.2 because the quorum requirements had been met in that a majority of the Board heard each case and because application of the majority requirement of Section 138.135.3 "would violate the constitutional requirement of uniform assessment by allowing same-class properties to be assessed differently."

The facts relating to this point are undisputed. All of the Appendix A cases apparently were heard by a majority of the St. Louis County Board of Equalization. The hearings were not transcribed or recorded. In all of the Appendix A cases, only one member of the Board that was present at the respective hearings actually participated in determining each case. In sixty-two of the cases, a Board member that was not present at the hearings also participated in the determination. Only one Board member made the determina-

tion in the other four Appendix A cases. The issue is the construction and application of Sections 138.135.3 and 138.040.2.

In reviewing a bench-tried case, we will sustain the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously states or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.1976). Statutory construction is a matter of law, not of fact. *St. Louis County v. B.A.P., Inc.*, 25 S.W.3d 629, 631 (Mo.App.2000). Therefore our review of this matter is de novo, and this Court gives no deference to the trial court's determination of law. *Id.*

A statute is not to be interpreted narrowly if such an interpretation would defeat the purpose of the legislation. *Id.* Moreover, it is presumed that every word, clause, sentence, and provision of a statute have effect; conversely, it is presumed that idle verbiage or superfluous language was not inserted into a statute. *Id.*

Section 138.135.3 states that if the Board conducts a hearing pursuant to Chapter 138 RSMo and the property owner requests that he be heard by a majority of the Board, and a majority is not in attendance "for any reason" then the property owner "shall prevail without further action." Section 138.040.2 states that a majority of the Board constitutes a quorum, "and a majority of the members present shall determine all matters of appeal or revision."

A majority of the St. Louis County Board of Equalization was present at all of the hearings of the Appendix A cases when taxpayers presented their evidence. However, taxpayers contend that "hearing" also includes the administrative tribunal's "consideration" of the evidence and arguments, and "determinative action" by the agency, and therefore they should have

automatically prevailed under Sections 138.135.3 and 138.040.2. Taxpayers rely on *City of Richmond Heights v. Bd. Of Equalization of St. Louis County*, 586 S.W.2d 338, 342 (Mo. banc 1979), in support of this assertion. Taxpayer's reliance on *City of Richmond Heights* is misplaced because the Supreme Court in that case was describing a "hearing" as used in the definition of "contested case" in Section 536.010(3).[4] *Id.* at 342–43. The Supreme Court stated that a board of equalization proceeding is a nonadversary proceeding and is not a contested case as defined in Section 536.010(3). *Id.* The Supreme Court specifically stated that the legislature did not intend "hearing" as used in Section 536.010(3) to include a nonadversary proceeding before a county board of equalization. *Id.* A "hearing" in administrative law is defined as: " . . . any setting in which an affected person presents arguments to an agency decision-maker." BLACK'S LAW DICTIONARY 725 (7th ed.1999). A hearing before a board of equalization and a decision or determination based on that hearing are discrete, but interconnected events.

Given that a hearing before a board of equalization and the determination based on that hearing are discrete events, it follows that if a property owner requests a hearing before a majority of a board of equalization pursuant to Section 138.135.3,

and a majority of the board attends the hearing, then the provision that the "property owner shall prevail without further action[,]" is not applicable.

■ However, this does not mean that the St. Louis County Board of Equalization made a proper, final determination of the Appendix A cases. Section 138.040.2 plainly requires that "a majority of the members present shall determine all matters of appeal[.]" It is presumed that every word, clause, sentence, and provision of a statute have effect; conversely, it is presumed that idle verbiage or superfluous language was not inserted into a statute. *B.A.P., Inc.*, 25 S.W.3d at 631. A statute is not to be interpreted narrowly if such an interpretation would defeat the purpose of the legislation. *Id.* Moreover, procedural requirements enunciated by the Missouri Legislature imposed on county boards of equalization must be strictly complied with. *McGraw–Edison Company v. Curry*, 485 S.W.2d 175, 180 (Mo.App.1972).

If the language of Section 138.040.2 were construed to mean that a decision could be made by a majority of those Board members who were present when the determination was formally made without regard to which members of the Board physically attended the hearing, then it could produce an anomalous result. A single member of the board could determine an appeal if he or she were the sole mem-

---

**4.** The Missouri Supreme Court stated that "hearing" as it applied in Section 536.010(2) concerning the definition of "contested case" carried a sense which

presupposes a proceeding before a competent tribunal for the trial of issues. Between adversary parties, the presentation and consideration of proofs and arguments, and determinative action by the tribunal with respect to the issues; it also requires that the parties be apprised of all evidence offered or considered, with the opportunity to test, examine, explain, or refute such evidence; it contemplates an opportunity to

be heard, not only the privilege to be present when the matter is being considered, but the right to present one's contentions and to support the same by proof and argument. . . . Thus, there is no "hearing" when the party does not know what evidence is offered or considered, and is not given an opportunity to test, explain, or refute.

*City of Richmond Heights*, 586 S.W.2d at 342 (quoting 39 C.J.S. Hear. 632–33). The Court in that case specifically stated that the above-quoted definition of "hearing" did not apply to a hearing before the County Board.

ber present at the formal determination, even if the entire board had been present at the hearing and a majority of the board at the hearing was opposed to the result of the formal determination by the sole member. Under this interpretation, a single board member could determine an appeal even if he or she was not present for the hearing, and even though no transcript was made of such hearings. This would make meaningless the requirements of Section 138.135.3 that a majority of the board had to be present for the hearing, if requested by the property owner. Construing Section 138.040.2 in light of Section 138.135.3, this Court concludes that the former requires that the determination of all matters of appeal in which a hearing is held under Chapter 138 must be made by a majority of the members of the board of equalization present at the hearing. Consequently, the St. Louis County Board of Equalization failed to make a final determination of the appeals in any of the Appendix A cases, and the Commission had no jurisdiction over those cases. Section 138.430.1. Point sustained.

In his third point on appeal, County Assessor contends that the trial court erred in overruling the determination of the Commission's hearing officer that taxpayers failed to make a submissible case that they suffered unconstitutional discrimination under Section 137.016.1(1) as applied, because taxpayers presented no relevant evidence that would support a claim of intentional discrimination, and taxpayers' proffered evidence of unconstitutional discrimination concerned assessors and counties outside of St. Louis County, the territorial limits of the authority levying the property tax.

The Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." During the rele-

vant period, the Missouri Constitution, art. X sec. 3 required that "[t]axes . . . shall be uniform upon the same class or subclass of subjects within the territorial limits of the authority levying the tax." County Assessor contends that St. Louis County is the correct territorial limit, not the State of Missouri. We agree. The ad valorem real property tax is levied by the governing body of the county, which is the taxing authority. *Beatty v. State Tax Commission*, 912 S.W.2d 492, 496–97 (Mo. banc 1995). This is consistent with the fact that the Commission's jurisdiction over the appeals of property owners from rulings by Boards relating to assessments of property is appellate, or derivative, in nature, and the jurisdiction of the Commission is no more extensive than that of the Board. *Foster Bros. Mfg. Co. v. State Tax Commission of Missouri*, 319 S.W.2d 590, 593, 595 (Mo.1959). The power of the board of equalization is to hear complaints and appeals, and to adjust, correct, and equalize the valuations of taxable real or tangible personal property within the County. *Id.* at 593–94. In other words, the board of equalization deals with intra-county equalization, and the Commission, in hearing an appeal from a ruling of the Board, is limited to considering issues of intra-county equalization. The territorial limit of the authority levying the tax in question under Section 137.016.1(1) is each county, not the State of Missouri.

The Commission hearing officer properly excluded the proffered evidence concerning the practices of assessors outside of St. Louis County. Taxpayers failed to make a submissible case that they suffered unconstitutional discrimination, and the trial court erred in overruling the determination of the Commission hearing officer. Point sustained.

In his first point on appeal, County Assessor argues that the Commission de-

cision affirming the County Board classifications of taxpayers' properties as commercial was supported by competent and substantial evidence because taxpayers failed to present any competent evidence that the properties were residential under Section 137.016.1(1) as being structures with four or fewer dwelling units, and taxpayers thereby failed to meet their burden of proof.

■ There is no longer an automatic presumption regarding the correctness of an assessor's valuation. Section 138.431.3. This statutory change from the previous situation in which the assessor's valuation was presumed to be correct does not mean that there is now a presumption in favor of taxpayer. The taxpayer in a Commission tax appeal still bears the burden of proof and must show by a preponderance of the evidence that the property was improperly classified or valued. *Industrial Development Authority of Kansas City v. State Tax Commission of Missouri*, 804 S.W.2d 387, 392 (Mo.App.1991). Taxpayers did not present substantial, competent evidence to meet this burden of proof, even assuming that the proffered evidence excluded by the Commission hearing officer relating to taxpayers' properties in St. Louis County should have been admitted. Taxpayers did not contend that the properties should have been classified as residential under Section 137.016.1(1) as interpreted by case law. The proffered evidence relating to the structural configuration of several properties of taxpayers in St. Louis County showed that the divisional walls and certain firewalls in these properties contained doorways, that is, structure-to-structure openings. Those divisional walls were not "structural walls" under *Morton v. Brenner*, 842 S.W.2d at 542, and did not divide each building into separate structures such that the properties could be classi-

fied as "residential" for purposes of Section 137.016.1(1). There is no evidence in the record before this Court that taxpayers' properties which are located in St. Louis County should have been classified as residential rather than commercial under Section 137.016.1(1) and the applicable case law interpreting that statute. The Commission decision affirming the County Board of Equalization's classification of taxpayers' properties as commercial is supported by competent and substantial evidence. Point sustained.

We turn to the appeal of City's assessor. The first point on appeal does not set out a claim of error. Rather, it asserts what City Assessor believes to be the proper standard of review for this Court for all of the points on appeal, which is more properly a matter for the argument portion of her brief.

■ As a general rule, on appeal from a circuit court's review of an administrative decision, this Court reviews the decision of the administrative agency, not the judgment of the circuit court. *Daly v. P.D. George Company*, 77 S.W.3d 645, 648 (Mo.App.2002); *Nance v. State Tax Commission of Missouri*, 18 S.W.3d 611, 615 (Mo.App.2000). This Court is limited to a determination of whether the decision is supported by competent and substantial evidence upon the whole record, or whether it is arbitrary, capricious, unreasonable, unlawful, an abuse of discretion, or in excess of the agency's jurisdiction. *Id.* This Court considers the evidence in the light most favorable to the administrative agency, along with all reasonable inferences therefrom, and if the evidence would support either of two opposed findings, we are bound by the administrative determination. *Daly*, 77 S.W.3d at 648. Further, while as a general rule judicial review of the decisions of administrative agencies is limited to matters that arose before the

agency and deals only with questions of law on the face of the record, barring consideration of evidence other than that before the agency, by statute a court may hear and consider evidence of alleged irregularities in the proceedings or agency unfairness not shown in the record. *Boyer v. City of Potosi*, 38 S.W.3d 430, 434 (Mo. App.2000). Deciding constitutional issues is beyond the authority of an administrative agency, and the courts must review agency actions that present constitutional questions. *Fayne v. Department of Social Services*, 802 S.W.2d 565, 567 (Mo.App. 1991); *Duncan v. Missouri Board for Architects, Professional Engineers and Land Surveyors*, 744 S.W.2d 524, 530–31 (Mo. App.1988). Our review of a constitutional issue raised before an administrative agency must, perforce, be a review of the circuit court's decision on the constitutional question. *Id.*

To facilitate analysis, we address City assessor's remaining points on appeal out of sequence. In her fourth point on appeal, City assessor argues that the trial court erred in finding that there were unconstitutional inter-county discriminatory practices because it lacked jurisdiction over that issue, which was not before it as the Commission only had jurisdiction over alleged intra-county discriminatory practices in this case.

This issue has already been discussed in our review of County assessor's third point on appeal, and what we stated there applies equally to the City, the City Board, and taxpayers' appeal to the Commission of the cases on properties in the City. The Missouri Constitution, art. X sec. 3 requires that taxes be uniform on the same class or subclass within the territorial limits of the authority levying the tax, which in this case is the City. *Beatty*, 912 S.W.2d at 496–97. The Commission's jurisdiction over those cases was appellate, and limited to that of the City Board of Equalization, which was limited to hearing complaints and appeals and to adjust, correct and equalize the valuations of taxable real or tangible personal property within the City. *Foster*, 319 S.W.2d at 593–95. The issue before the Commission was intra-county, or in this case, intra-city uniformity, not inter-county uniformity, and the commission lacked jurisdiction to rule on alleged inter-county discrimination. Point sustained.

We address City Assessor's second and third points on appeal jointly. In her third point on appeal, City Assessor contends that the Commission hearing officer properly excluded taxpayers' proffered evidence because said evidence "was irrelevant, lacked foundation, contained hearsay, involved unqualified expert opinions, and was inadmissible." In her second point on appeal, City Assessor states that the Commission "correctly and properly applied the correct legal standard to the claims of the property owners because prevailing 'rule of four' judicial standards disqualify the properties in question from 'residential' treatment and because prevailing 'burden of proof' standards require a party seeking to prosecute a discriminatory classification claim to establish intentional discrimination or an assessment 'so grossly excessive' as to be 'entirely inconsistent with an honest exercise of judgment.'"

In reviewing the decision of an administrative agency, this Court is limited to a determination of whether the decision is supported by competent and substantial evidence, or whether it is arbitrary, capricious, unreasonable, unlawful, an abuse of discretion, or in excess of the agency's jurisdiction. *Nance*, 18 S.W.3d at 615. To determine if an agency has abused its discretion, this Court must look to see if the agency's decision is clearly against the logic of the circumstances, and is so arbitrary

and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Curtis v. Board of Police Commissioners of Kansas City,* 841 S.W.2d 259, 262 (Mo.App.1992). The Commission hearing officer properly excluded all evidence concerning properties outside of the territorial limits of the City and the practices of assessors in other counties, for the Commission was limited by its appellate jurisdiction to consideration of intra-county or intra-city equalization matters. *Foster,* 319 S.W.2d at 593–95; *Beatty,* 912 S.W.2d at 496–97.

■■ As for the remainder of the excluded evidence, assuming *arguendo,* that such rejections were indeed error by the Commission, such error would constitute harmless error, as the admission of that evidence would not have materially affected the merits of the action. *Whitworth v. Jones,* 41 S.W.3d 625, 627 (Mo.App.2001). Taxpayers do not contend that any of the properties located in the City which are at issue in this litigation should have been classified as residential rather than commercial under Section 137.016.1(1) and the applicable case law interpreting that statute. Failing that, there would have to be intentional discrimination against the taxpayers, or the assessments on the properties at issue would have had to be "so grossly excessive" such that they were "entirely inconsistent with an honest exercise of judgment" by City Assessor.

■■ Missouri courts have recognized that it is impossible to avoid all discriminatory impact in tax classifications, and that absolute uniformity of tax classifications and assessments is an unattainable ideal, while practical uniformity is the constitutional goal. *Savage v. State Tax Commission of Missouri,* 722 S.W.2d 72, 78–79 (Mo. banc 1986); *Pipe Fabricators, Inc. v. Director of Revenue,* 654 S.W.2d 74, 77 (Mo. banc 1983); *Equitable Life Assur-*ance *Society of U.S./Marriott Hotels, Inc. v. State Tax Commission of Missouri,* 852 S.W.2d 376, 384 (Mo.App.1993). The proffered evidence does show two similar properties with more than four dwelling units in the City, one of which was classified, assessed, and taxed as commercial property, and the other was classified, assessed, and taxed as residential property because the taxpayers had filed a condominium declaration, which is in accord with *Alpha One,* 887 S.W.2d at 391–92. The proffered evidence also indicates that in a number of cases the City Board of Equalization lowered the assessment, apparently reclassifying certain properties as residential that the City assessor had listed as commercial, and in other cases the City assessor reclassified properties upon evidence that structures were in fact divided by firewalls, per *Morton.* At best this would show that the City assessor made errors in judgment and misclassified property as commercial, not residential. Making mistakes does not amount to unconstitutional discrimination. The basic standard is:

> [M]ere errors of judgment by officials will not support a claim of discrimination. There must be something more,—something which in effect amounts to an intentional violation of the essential principle of practical uniformity. The good faith of such officers and the validity of their actions are presumed; when assailed, the burden of proof is upon the complaining party.

*Sperry Corp. v. State Tax Commission,* 695 S.W.2d 464, 468 (Mo. banc 1985) (quoting *Sunday Lake Iron Company v. Wakefield Tp.,* 247 U.S. 350, 353, 38 S.Ct. 495, 495, 62 L.Ed. 1154, 1156 (1918)). *See also Brandel v. State Tax Commission of Missouri,* 716 S.W.2d 886, 888–89 (Mo.App. 1986). "[T]he courts and the [State Tax] Commission refrain from correcting as-

sessments which reflect no more than de minimis errors of judgment on the part of assessors." *Savage*, 722 S.W.2d at 79. *See also Sperry Corp.*, 695 S.W.2d at 468 (Mo. banc 1985). There is not, and cannot be, a precise measure in weighing the classification of properties or entities, and the proper test is whether a difference in classification constitutes "invidious discrimination." *Pipe Fabricators*, 654 S.W.2d at 77.

Taxpayers cite *Hopkins v. Odom*, 619 S.W.2d 857 (Mo.App.1981) for the proposition that one taxpayer's assessment being excessively high is a violation of the constitutional guarantees of uniformity and equal protection. This is in accord with *Savage*, 722 S.W.2d at 78, that an assessment that is so grossly excessive reflects a dishonest exercise of judgment. However, *Hopkins* involved a piece of property that was being taxed at a rate approximately double that of the vast majority of property in the same class in the county. Taxpayers' proffered evidence does not show this; rather it shows that the assessor may have misclassified several parcels of property in the City as commercial which should have been classified as residential, which the Board apparently adjusted. By itself, in a large metropolitan area, this reflects no more than a de minimis error on the part of an assessor, a mere error in judgment by an official, insufficient to support a claim of discrimination. *Savage*, 722 S.W.2d at 79; *Sperry*, 695 S.W.2d at 468. Although there is no longer a presumption in favor of the assessor, it is still the taxpayer's burden to prove intentional discrimination, or that an assessment was so grossly excessive as to be completely inconsistent with an honest exercise of judgment. *Savage*, 722 S.W.2d at 78–79; *Town & Country Racquet Club v. State Tax Commission of Missouri*, 811 S.W.2d 403, 404 (Mo.App.1991). The proffered evidence would not prove that the City Assessor engaged in intentional discrimination, or that any assessment was grossly excessive. Taxpayers' properties in the City were properly classified as "commercial" under Section 137.016.1(1) and the applicable case law. Point sustained.

The judgment of the Circuit Court of St. Louis County is reversed and remanded with directions to affirm the Commission's decision regarding the non-Appendix A cases involving the County Assessor, and with further directions to remand the Appendix A cases to the Commission with instructions to remand those cases to the Board for further proceedings in accordance with statute and consistent with this opinion. The judgment of the Circuit Court of the City of St. Louis is reversed and remanded with directions to affirm the decisions of the Commission.

MARY R. RUSSELL, P.J., and LAWRENCE G. CRAHAN, J., concur.