MICHAEL J. CURLEY ET AL., PLAINTIFFS IN ERROR, v. MAYOR AND ALDERMEN OF JERSEY CITY, DEFEND-ANT IN ERROR.

Argued June 21, 1912—Decided November 18, 1912.

In the trial of an issue before a jury to determine the amount to be paid for lands condemned by a municipality for park purposes, evidence is admissible of the price paid by such municipality at private purchase without condemnation proceedings for other lands to become part of the same park, where such other lands are substantially similar to the land in question, and it does not appear that there were any special circumstances not applicable to the latter which made the price paid for the former abnormal. The mere fact that the municipality making such purchase at private sale had the power of condemnation is not such a special circumstance.

On error to the Supreme Court, Hudson Circuit.

For the plaintiffs in error, *Collins & Corbin.*

For the defendant in error, *James J. Murphy.*

The opinion of the court was delivered by

WHITE, J.  The defendant in error (hereinafter called the city) brought condemnation proceedings against the plaintiffs in error (hereinafter called the landowners), owner and mortgagee, respectively, of lands condemned by the city for park purposes in Jersey City.  The landowners appealed from the award of the commissioners, and an issue was formed as to what amount should be paid to the landowners, which issue was tried in the Hudson County Circuit Court before a jury.  The trial court admitted evidence of the price paid by the city at private sale to it, without condemnation pro-ceedings being instituted, for two properties immediately ad-joining the property in question and admittedly substantially similar to it, which the city had purchased to become a part of the same park.

It is contended on the part of the landowners that this evidence was inadmissible, not because of dissimilarity, but because the purchaser (the city) had the power to condemn the lands purchased if the owner had refused to sell them at the price in question. It is argued that because of this circumstance the sale was, in a sense, a forced sale, or, at least, that the price was the result of a compromise, and is not, therefore, evidence of fair market value. This contention is the only point involved in the case.

In condemnation proceedings the landowner is entitled to receive, and the party condemning is bound to pay, the fair market value of the property. That fair market value is what a willing purchaser would pay and a willing seller would take for the property under circumstances reasonably calculated to produce a fair sale. In order to ascertain what would be such a fair market value, evidence of the price at which sales have taken place by willing sellers to willing purchasers, under such circumstances, of properties of substantial similarity in the neighborhood, and of recent occurrence, is admissible. This is so because such sales are supposed to have been made at the fair market value. Substantially, this is true, and, from a practical standpoint, the result is as satisfactory as is possible with reference to anything of such a shifting and uncertain nature as market value of real estate.

Almost all sales, however, are necessarily influenced on one side or the other by considerations outside of the fair market value of the property. Either the seller is influenced by the circumstances of his affairs, which make it desirable for him to sell even at some sacrifice, or else he thinks he is getting more for his property than its real worth; and, on the other hand, the purchaser has some special need or use for the property which makes it more valuable to him than to others not having such need, or else he thinks he is buying at less than the property is really worth. If the sale, as here, takes place between parties, one of whom has the power to condemn, it may likewise be that the seller, or the buyer, and possibly both, are influenced by other considerations as well as by what they think is the fair market value of the prop-

erty. The seller may think that if he does not sell amicably he will be put to the expense of being properly represented at the condemnation proceedings; but, on the other hand, he doubtless weighs against this, the fact that a jury is very apt to give a liberal market value for properties taken under condemnation, for the very reason that the owner is being compelled to sell against his will. The purchaser, on the other hand, knowing that what the law requires him to pay is at least a fair value, and knowing that a jury is inclined to construe this as meaning a value particularly "fair" to the man who sells against his will, may also be somewhat influenced. But, in the absence of extraordinary circumstances, we are unable to see, as a general rule, why private sales to parties having the right to condemn, do not come quite as near representing in their results true market value as do such sales made between parties neither of whom have this power. It is easy enough to imagine special circumstances, falling in each class, where the result in the price obtained is, because of such special circumstances, so clearly abnormal as to destroy the similarity which must exist in order that the evidence shall be admissible. In other cases where the special circumstances are not of sufficient importance to produce this result, they may, nevertheless, affect the weight of the evidence, and be used for that purpose before a jury. This is so whether the purchaser is or is not a party having the power to condemn.

In *Hadley* v. *Freeholders of Passaic,* 44 *Vroom* 197, certain property was condemned by the board of freeholders for the purpose of constructing thereon the approach to a bridge over the river. Evidence was admitted of the price which the same board of freeholders had, at private purchase, paid for the property on the other side of the river for the other approach. The Supreme Court, in an opinion by Chief Justice Gummere, said in that case: "The first error assigned is to the admission of the testimony of one Zabriskie as to the price which he received. from the board of freeholders of Bergen county for land directly across the river from Mrs.

Hadley's, and upon which the other abutment of the bridge, apparently, was to rest. This testimony seems to us to have been competent."

In the present case, not only does it not appear that the condemnation power had any undue influence in fixing the price at which the sales in question were made, but, on the contrary, it affirmatively appears that, as to one of these sales, it was made at the asking price of the seller, and was not, therefore, either a compromise or the result of any oppressive influence. Under these circumstances, we think the evidence was properly admitted.

The judgment under review should be affirmed.

*For reversal*—THE CHANCELLOR, GARRISON, JJ. 2.