GENERAL MOTORS CORPORATION, PROSECUTOR-APPEL-
LANT, v. STATE BOARD OF TAX APPEALS AND CITY
OF LINDEN, RESPONDENTS-APPELLEES.

Argued May 21, 1940—Decided December 12, 1940.

For the prosecutor-appellant, *McDermott, Enright & Car-
penter* (*James D. Carpenter, Jr.,* of counsel).

For the respondent-appellee city of Linden, *Lewis Winetsky.*

PER CURIAM.

This is an appeal from a Supreme Court judgment affirm-
ing the State Board of Tax Appeals and dismissing a writ
of *certiorari* allowed to review the judgment of that tribunal.
The only question in this case is whether an assessment of

$2,500,000 on the personal property of the appellant, General Motors Corporation, for the year 1938 was a proper assessment.

So far as the record shows, the personal property assessment was not particularized but stated in a lump sum. The appeal of the taxpayer to the county tax board was dismissed. The appeal to the State Tax Board, dismissed by that body, prayed that the personal property assessment be reduced to the sum of $862,403.

In its brief the appellant now says that the personal property assessment should be $1,365,909.19, made up as follows:

| | |
|---|---:|
| Machinery and equipment | $731,618.00 |
| Parts | 395,815.00 |
| New cars on hand | 218,598.24 |
| Accounts receivable | 19,877.95 |
| | |
| Total | $1,365,909.19 |

The assessment as made is presumably accurate. *Central Railroad of New Jersey* v. *State Tax Department,* 112 *N. J. L.* 5, 8. The taxpayer had the burden of overcoming this presumption and certain witnesses were called at the hearing before the State Tax Board. One witness, Mr. R. H. Glander, was of the opinion that the "machinery and equipment" was valued at $731,618 as of October 1st, 1937, which is the assessing date for the year 1938. Another witness for the taxpayer, its comptroller, testified that this "machinery and equipment" was carried on the books of the company on October 1st, 1937, at $2,130,611 (*i. e.,* cost, less depreciation). The State Tax Board rejected the testimony of the former witness, offered as an expert, on the ground that "he was not familiar with machinery and equipment peculiar to the motor industry." The State Board, while rejecting his estimate of value, arrived at no "true value" figure of its own. We do not think the action of the State Board in rejecting the expert's qualifications *in toto,* was justified. While it is true that he testified he had never bought and sold conveyors, as such (the item "machinery and equipment" con-

sisted in the main of conveyors), yet his experience was comprehensive enough to entitle his testimony concerning the true value of the several elements and components (as well as the collateral parts, &c.) that went into this type of conveyor, to consideration. The State Board likewise considered that the value of this particular personal property was less than the value at which it was carried on the books produced by the comptroller of the appellant corporation but, as stated above, did not determine its true value. There was no other testimony offered at the hearing before the State Board as to the true value of this part of the personal property on which the board could predicate its judgment, if it rejected the figures of the expert, as in this case it did. We think the expert displayed an experience and a familiarity with prices of the items (*i. e.*, market value) that go to make up the equipment in question, as evidenced by the analytical exhibit prepared by him personally, sufficient to qualify him to testify to the value of this part of the personal property and that in the absence of proof to the contrary, no testimony on this phase of the case having been produced by the municipality, his figure of $731,618 should have been accepted.

On the second item going to make up the total of personal property, *i. e.*, "parts," the taxpayer's witnesses put a value thereon of $395,815. The general manager of the appellant company testified that a five-day supply of material only (*i. e.*, automobile parts) was kept on hand and that the daily average of material received, based on the five-day supply theory, was $79,163, which, if multiplied by five, would result in the figure above mentioned. In arriving at an assessment of personal property of this character, where such personal property is constantly arriving at the plant as "parts" of automobiles and going out as finished motor units, the statute— *R. S.* 54:4-11—provides, "Personal property consisting of stocks in trade and materials used in manufacture * * * and completed products, shall be estimated at the average of such personalty located in the taxing district during the year preceding the date as of which the assessment is made, or the average for such portion of the year that the property may be in the possession of the person assessed." The statute does

not ordain any particular method of "averaging." The month-end inventories, ascertained from the taxpayer's books and records, furnish a fair basis for arriving at an average. Operations in this plant commenced about April 1st, 1937. Taking each of the month-end inventories from April, 1937, to September, 1937, inclusive, results in a total of $9,383,128. The average of this inventory for the six-month period therefore is $1,563,854. No proof was offered as to the sale value of these parts. It was said that they were not salable. This may be quite true since the parts were made for a particular automobile which the taxpayer was manufacturing and assembling and perhaps could not be used for any other make. The great disparity that results between the "five-day theory" of valuation as to these parts, advanced by the taxpayer, and the valuation struck by making the company's official inventory at the end of each month the basis for an "average" mentioned in the statute, *supra,* was not explained anywhere in the appellant's argument or brief. The theory of the taxpayer on this item of the case is indefinite and vague. It is impossible to say from the testimony of the witness who arrived at a value of these "parts" whether he meant that this appellant limits itself to such supply in this plant, or in some other plant, or generally in most of its plants. If there was a five-day cessation of the flow of materials into the plant, it is not stated that the supply of parts would have been exhausted. The witness said, "We would be on the ragged edge to run." This had been his experience elsewhere. But such failure of operation could readily be due to the exhaustion of some one or more parts, essential to the continuance of operation in turning out finished automobiles of the kind in manufacture.

Reliance on inventory seems to us to be a better and more reasonable method in determining the amount of material on hand and its value.

In conclusion, there is no substance whatever to the contention that the personal property assessment was too high because few of the parts were salable. This may be admitted because parts made for one automobile might not be suitable for parts made for a different type of motor car. The "parts" were not purchased or manufactured to be sold as such. The

statute sets the fair market price as the standard of value but that value may be determined by considering the cost to the taxpayer where, as here, the personalty was bought or manufactured to be used to assemble a finished product. Compare *Hurd* v. *Cook,* 60 *N. J. L.* 70; *Gibbs* v. *State Board,* 101 *Id.* 371.

As to the other two items of personalty, namely, new cars on hand and accounts receivable, there is no dispute. The value of the finished product in the former instance is established. We conclude that there was a basis for the judgment found by the Supreme Court even though the alleged low value of the Glander figures on machinery and equipment be accepted instead of rejected. That estimate of value added to the value put on items three and four—new cars on hand and accounts receivable—and accepting the average valuation of parts, founded on inventory rather than on the five-day theory, results in an amount in excess of the $2,500,000 assessment.

The appellant failed to overcome the presumption that the assessment as levied was correct, *Central Railroad* v. *State Tax Department, supra;* or that the assessment as made was erroneous, *Livingston Township* v. *Parkhurst,* 122 *Id.* 598. We find no error in the judgment of the Supreme Court.

The judgment is therefore affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DONGES, PORTER, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, JJ. 9.

*For reversal*—None.