35 N.J. Super. 86 (1955)
113 A.2d 194
ROSE SOROKACH, AS EXECUTRIX OF THE ESTATE OF ALEXANDER SOROKACH, DECEASED, PLAINTIFF-APPELLANT,
v.
WILLIAM TRUSEWICH, ET AL., CO-PARTNERS TRADING AS ARROW CLOTHING COMPANY AND AS ARROW COAT & SUIT CO., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 21, 1955.
Decided April 5, 1955.
*88 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Leopold Frankel argued the cause for plaintiff-appellant (Messrs. Frankel & Frankel, attorneys).
Mr. James A. Major argued the cause for defendants-respondents (Mr. Henry L. Janowski, attorney).
The opinion of the court was delivered by CONFORD, J.A.D.
The question before us is whether the Chancery Division correctly determined the "fair market value" of the operating machinery and equipment of a clothing manufacturing partnership, hereinafter designated as the "Arrow" company, as of October 1, 1950. The plaintiff's decedent, Alexander Sorokach, died that day one of six equal partners in the business and there ensued litigation over the settlement and evaluation of the interest of his estate in the partnership assets. On a prior appeal from a determination in the Chancery Division in the matter it was held by the Supreme Court, inter alia, that the "fair market value" of the machinery and equipment as of the date of death should be determined by the trial court as the basis for distribution in so far as that class of the assets was concerned, rather than "book value," as had been held by the Appellate Division. *89 Sorokach v. Trusewich, 13 N.J. 363 (1953). The case was remanded for the making of that determination.
On the basis of testimony adduced at the first trial and supplemented at the trial on the remand, the Chancery Division has determined the fair market value of the designated assets to be the sum of $26,450. Appellant maintains that the figure is erroneously low and that on the basis of the only testimony adduced at the trial assertedly consonant with the standard fixed by the Supreme Court the valuation should be set at $64,945.
"Fair market value" is a familiar concept in the law of property valuation. In New Jersey it is the formulaic criterion both of the "true value" according to which property is to be assessed for taxation, Hackensack Water Co. v. Division of Tax Appeals, 2 N.J. 157, 162 (1949), and of the basis upon which an owner is entitled to be compensated for property taken in eminent domain proceedings, Curley v. Jersey City, 83 N.J.L. 760, 761 (E. & A. 1912). The concept has been more particularly expressed in terms of "the price which * * * could be obtained for the property, in money, at a fair sale, * * * between a willing seller and a willing buyer; that is, one not obliged to sell dealing with one not obliged to buy," New Jersey Bell Telephone Co. v. City of Newark, 118 N.J.L. 490, 494 (Sup. Ct. 1937), affirmed 124 N.J.L. 451 (E. & A. 1940). A variant of the same idea is "what a willing purchaser would pay and a willing seller would take for the property under circumstances reasonably calculated to produce a fair sale." Curley v. Jersey City, supra (83 N.J.L., at page 761). Perhaps in recognition of the reality that such transactions are as rare as the bargaining equilibrium postulated is perfect it has been observed that the criterion "is a hypothetical sale; hence the buyers therein referred to are hypothetical buyers, not actual and existing purchasers." Turnley v. City of Elizabeth, 76 N.J.L. 42, 44 (Sup. Ct. 1908). As was noted in the Curley case, supra (Id.),
"almost all sales * * * are necessarily influenced on one side or the other by considerations outside of the fair market value of *90 the property. Either the seller is influenced by the circumstances of his affairs, which make it desirable for him to sell even at some sacrifice, or else he thinks he is getting more for his property than its real worth; and, on the other hand, the purchaser has some special need or use for the property which makes it more valuable to him than to others not having such need, or else he thinks he is buying at less than the property is really worth."
For a consideration of the effect of the urgent necessities of the buyer upon sales prices as indicia of value see East Ridgelawn Cemetery v. Winne, 11 N.J. 459, 470 (1953); Delaware, Lackawanna & Western R. Co. v. City of Hoboken, 16 N.J. Super. 543, 567, 568 (App. Div. 1951), reversed on other grounds, 10 N.J. 418 (1952); compare the reverse effect where there appear to be advantages to the seller beyond the sales price, noted in the Hoboken case, supra (16 N.J. Super., at page 566).
Yet in every issue such as this the tribunal charged with its resolution must, no matter how difficult, attempt to set down in dollars the price which would pass between bargainers in assumedly perfect bargaining balance. See East Ridgelawn Cemetery v. Winne, supra (11 N.J., at pages 469-470). If in the present case the effort failed it was solely for lack of competent proof.
In the determination of the fair market value of machinery and equipment in place and in use in a going concern there should be reflected the valuation element appertaining to that use. Hackensack Water Co. v. State Board of Tax Appeals, 129 N.J.L. 535, 537 (Sup. Ct. 1943), affirmed sub nom. Hackensack Water Co. v. Township of North Bergen, 130 N.J.L. 483, 486 (E. & A. 1943); Central R. Co. of New Jersey v. Thayer-Martin, 114 N.J.L. 69, 75, 78 (Sup. Ct. 1934). No competent evidence bearing on that feature of the value of the property here in question found its way into the record before the trial court. Five expert witnesses testified, all of them qualified solely as dealers in used machinery, two for plaintiff and three for the defendants. With minor variations in approach they offered appraisals as to what the machinery and equipment at the Arrow plant, dismantled and removed from the premises, *91 would bring if auctioned or wholesaled to a market of used machinery dealers. This is plainly liquidation value, not going value. There is reflected not at all "the value to the owner" but only "the value to the acquirer," here an acquirer for whose purposes the property is worth much less than to one proposing to carry on the same operation as the existing owner with the machinery. Cf. East Ridgelawn Cemetery v. Winne, supra (11 N.J., at page 469); General Motors Corp. v. State Board of Tax Appeals, 125 N.J.L. 574, 577, 578 (E. & A. 1940). Dealers who buy machinery being disposed of by its owner from a plant under disassembly have not negotiated with the uncompelled seller envisaged by the controlling rule. 1 Bonbright, Valuation of Property (1937), p. 463. Nor does what they pay reflect in the slightest its "going" value to the owner.
But appellant asserts her expert witnesses Stein and Cutler in appraising the value of the property at $64,945 did have in mind the value of the articles in place as part of a going concern. The difficulty with her position, however, is that on cross-examination Stein's figure was shown to have been built up from an auction-price base of $30,000 by factors concerning which he was largely incompetent, by his own admission, and that Cutler's testimony was obviously but a hollow echo of Stein's, substantially devoid of independent development. Stein allowed for such costs as rehabilitation, without regard to whether or not the equipment at the Arrow company needed it, and plumbing and electrical installation expense, in respect to which the trial judge correctly held the witness unqualified. He also allowed for a putative expense of moving the machinery from dealer to plant. This is obviously speculative, and, in any case, of doubtful allowability. Cf. the repaving item disallowed in Hackensack Water Co. v. Township of North Bergen, supra (130 N.J.L., at page 485). The only one of Stein's added factors entitled to weight is that of dealer's profit, which he estimated at 10-15%. But upon recapitulation of all of the imposts which he added to his auction price of $30,000, even including an allowance of $10,000 for overhead of his *92 business as a dealer, he could not produce a total in excess of $61,500, as compared with his appraisal of $64,945.
Neither Stein nor any other witness could give anything but a purely speculative answer to the question as to what a potential purchaser, willing but uncompelled, intending to operate the business, would pay for the machinery and equipment, in place, at the Arrow plant. Aside from such an actual sale, the best evidence of the "fair market value" of the property would be sales of similar equipment elsewhere between parties circumstanced as described. That evidence of such transactions was not available at the trial is understandable. Yet the trial court had a mandate to perform as best it could from the meagre competently established data submitted. It correctly conceived its assignment, saying it was to determine "the fair market value of the machinery in place at the defendant's factory." The absence of proper proofs to establish full fair market value was the peril of the plaintiff since upon her rested the burden of proving her claim.
Plaintiff stresses that defendants insured their equipment for $48,900, with a 90% co-insurance clause. We think this fact is of little or no evidentiary value. Considerations apart from the fair market value of property frequently attend the fixing of insurance coverage. One of defendants' representatives testified he would rather have the property "overinsured than underinsured."
What we take to be liquidation valuations of $16,000 and $21,000 were given by defendants' witnesses Brotman and Mittenthal, respectively. The opinion of defendants' witness Lesser was indefinite, varying from $16,000 to $23,000. As noted, plaintiff's witnesses Stein and Cutler on a comparable basis gave appraisals of $30,000. The estimates of dealer profit on resale from the witnesses on both sides varied from 10 to 30%. Somewhere within the range of the evidentiary data referred to is this paragraph, there being no other that was competent, the trial court had to find fair market value. It undertook to discharge its function in this manner:
*93 "Considering defendant's estimate of $16,000 as too low and plaintiff's estimate of $30,000 as too high, I feel that by averaging the two extremes we can arrive at a fair value of $23,000 as the price a wholesaler would pay for the machinery. Adding to this figure a wholesaler's profit of 15% we get a value of $26,450 which I find represents the fair market value of the machinery."
The statement is an unusually candid elucidation of what tribunals charged with finding value frequently do tacitly when satisfied that the appraisals of counter experts are approximately equally discountable in terms of bias, competence and reliability and where the fact finder is without special or independent knowledge sufficient to judge of the proofs other than by general impressions of the trustworthiness of the expert witnesses. Cf. Delaware, Lackawanna & Western R. Co. v. City of Hoboken, supra (16 N.J. Super., at page 562); State Highway Commission of New Jersey v. Lincoln Terminal Corp., 110 N.J.L. 190, 192 (E. & A. 1933); State Highway Commission v. Mayor and Board of Aldermen of Town of Dover, 109 N.J.L. 303, 307 (E. & A. 1932). We read the statement of the trial judge as indicating that he regarded the valuations of the experts on both sides as warranting substantially equal discount in terms of probative weight and reliability. Our impression, which cannot be as good as his as the trier of the case, so far as concerns the credibility of the witnesses, is in accord. R.R. 1:5-3(a). The bias of all of the experts in favor of the cause they were serving is apparent from the record. Stein paid little or no attention to such factors as age, condition or obsolescence of the equipment. His inspection of it was not thorough. There were obvious contradictions in Mittenthal's testimony and it was proven that he sold some comparable equipment in 1950 at a price considerably higher than his appraisal here. Brotman was guilty of a transparently improvised revision of his $16,000 appraisal to $13,000 on cross-examination. It is plain that his original $16,000 estimate represented what he would pay before resale, contrary to his implication on cross-examination, as he substantiated his appraisal by saying that the figure *94 represented, in part, a valuation of "9610" type machines at $35 per unit which he would resell for $50 or $55.
The 15% allowance for wholesaler's profit made by the trial judge is within the proofs adduced and seems to us fair.
On the whole case we agree that the $26,450 valuation made in the Chancery Division represents the fair market value of the property so far as determinable from the competent proofs presented.
Affirmed.