**Gregory F.X. DALY, License Collector, City of St. Louis, Missouri, Appellant,**

v.

**The P.D. GEORGE COMPANY, et al., Respondents.**

**No. ED 79613.**

Missouri Court of Appeals, Eastern District, Division Four.

April 16, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 28, 2002.

Patricia A. Hageman, Mark J. O'Toole, St. Louis, MO, for appellant.

Thomas L. Caradonna, Patrick T. McLaughlin, St. Louis, MO, for respondent.

LAWRENCE G. CRAHAN, Judge.

The St. Louis City License Collector ("Collector") appeals the judgment affirming the State Tax Commission's ("Commis-

sion") decision, which adopted the P.D. George Company's ("Taxpayer") valuation of its machinery and equipment for purposes of assessing manufacturers' tax pursuant to Sections 150.300 to 150.370 RSMo 2000.[1] We affirm.

Taxpayer is a manufacturer located in the City of St. Louis ("City") whose machinery and equipment is subject to City's manufacturers' tax. The machinery and equipment includes process lines made up of tanks, reactors, pumps, filter presses, conveying devices, weighing devices, mixers, ovens and boilers. The facility also includes a complete maintenance shop, life trucks, laboratories, work benches, housekeeping equipment, miscellaneous material, handling tables, carts, hoppers, safety equipment and support equipment.

On December 10, 1997, the Board of Merchants' and Manufacturers' Tax Equalization of the City of St. Louis ("Board") issued a notice to Taxpayer that increased the assessment of Taxpayer's tangible personal property to a market value of $7,018,587. Taxpayer appealed the assessment of its tangible personal property to the Board and the Board affirmed.

After the Board affirmed Taxpayer's assessment, Taxpayer appealed to the Commission. The Commission's chief hearing officer conducted a hearing at which Taxpayer and Collector presented evidence of the value of Taxpayer's tangible property. Taxpayer's evidence primarily consisted of the appraisal report and testimony of Allen D. Bealmer ("Appraiser"). In conducting his appraisal, Appraiser personally observed each item of machinery over four days of inspection at Taxpayer's facility. He set forth in detail a description of each item of property, including the condition

and the value approach utilized for establishing the true value of each item.

To arrive at his opinion of true value, Appraiser used both the market approach and the cost approach, depending on the particular item of property. Appraiser used comparable sales data from the market on all property valued using the market approach, and used the cost approach, applying depreciation, in those instances where comparable market data were not found. Appraiser obtained data from his employer's database, which includes at least 35,000 separate line items of market sales of property comparable to most of the property in Taxpayer's facility.

Appraiser did not add value to the machinery and equipment because it is installed in Taxpayer's facility, or deduct value from the property on the assumption that it would have to be removed if sold. Rather, Appraiser considered the property to have uses other than those for which it is used by Taxpayer, and that most of it is sold individually in the marketplace, such that a purchaser would not necessarily buy the property as part of Taxpayer's entire business. He employed the "fair market value in exchange" concept of value, or what a willing buyer would pay a willing seller for each individual item of property valued.

Gerald Huether, Collector's appraiser, also appraised the property, but added value to include costs for freight, taxes, and various installation costs, utilizing the "fair market value installed" concept of valuation. Mr. Huether based his valuation method on his opinion that Taxpayer's property's highest and best use would be as part of a special coatings manufacturing facility. Therefore, according to Mr. Huether, the property would be sold to a buyer who would continue using it as part

---

1. Unless otherwise indicated, all statutory ref-    erences are to RSMo 2000.

of an overall coatings manufacturing facility and not for other purposes. However, he conceded on cross-examination that the property could be put to other uses.

The chief hearing officer found that fair market value in exchange is the recognized standard under Missouri law, that Taxpayer's method of valuation under the fair market value in exchange concept was appropriate, and that Taxpayer presented substantial and persuasive evidence of the market value of the property. He also found that Taxpayer is not a special purpose facility utilizing special purpose property.

The chief hearing officer found that Collector employed a fair market value installed method of valuation, which included an estimate of costs for labor, material prices, freight, installation, taxes, and other miscellaneous fees to arrive at a total value of the property. Collector's proposed value amounted to $4,918,183 for the machinery and equipment, with an assessed value of $1,683,390. The hearing officer found no statutory, regulatory, or case law authority for utilization of Collector's valuation concept. He set aside the Board's assessment and found the true value in money for the property to be Taxpayer's proposed value of $2,376,475 with a corresponding assessed value of $789,160.

Collector appealed to the Commission. The Commission set aside the hearing officer's finding that it is unlawful to consider freight, taxes, installation, and other like charges. The Commission held that such charges could be appropriately included in the market value of tangible personal property when it is demonstrated that such costs would influence what a seller would be willing to sell the property for and what a buyer would be willing to pay for the property. The Commission found that Collector failed to demonstrate that there was a market for Taxpayer's proper-

ty as installed, further finding that market value installed is not always the proper method to determine true value in money. It also found that Taxpayer met its burden of providing substantial and persuasive evidence of market value according to Missouri's value in exchange valuation standard.

Collector filed a petition for review of the Commission's decision. The trial court affirmed. This appeal follows.

■ In reviewing the judgment, we examine the decision of the Commission, and not the decision of the trial court. *Smith v. Morton*, 890 S.W.2d 403, 405 (Mo.App.1995). We are limited to a determination of whether the decision is supported by competent and substantial evidence upon the whole record, or whether it was arbitrary, capricious, unreasonable, unlawful, or in excess of the Commission's jurisdiction. *Equitable Life Assurance Society of the United States/Marriott Hotels, Inc. v. State Tax Commission of Missouri*, 852 S.W.2d 376, 379 (Mo.App.1993). We consider the evidence in the light most favorable to the administrative body, together with all reasonable inferences therefrom, and if the evidence would support either of two opposed findings, we are bound by the administrative determination. *Id.*

■ "In matters of property tax assessment, this Court has acknowledged the wisdom of the General Assembly in providing an administrative agency to deal with this specialized field." *Id.* (quoting *Savage v. State Tax Commission of Missouri*, 722 S.W.2d 72, 75 (Mo.banc 1984) (internal quotations omitted)). Courts may not assess property for tax purposes and proper methods of evaluation and assessment of property are delegated to the Commission. *Id.* Overall, "this Court is loathe to substitute its judgment for the expertise of the

Commission in matters of property tax assessment. Absent clear abuse, we will stay our hands." *Id.* (quoting *Savage,* 722 S.W.2d at 75 (internal quotations omitted)).

▇ In his first point, Collector argues that the Commission erred in determining that proper valuation of manufacturing equipment should only include freight, installation, and other service charges when it is shown that such added values would influence a buyer or seller in determining the purchase price of the property. Rather, Collector contends that such elements should normally be included when valuing manufacturing equipment. In response, Taxpayer argues that because fair market value in exchange is the proper valuation method under Missouri law, Collector may only include freight, installation, and other costs when it can show that inclusion of such costs constitutes the equipment's value in exchange. We agree with Taxpayer.

▇ Section 137.115 requires that tangible personal property be assessed for tax purposes based on its true value in money. "True value" is the fair market value of the property, or the price that the property would bring when offered for sale by a willing seller who is not obligated to sell, and purchased by a willing buyer who is not compelled to buy. *St. Joe Minerals Corporation v. State Tax Commission of Missouri,* 854 S.W.2d 526, 528 (Mo.App. 1993). True value in money is defined in terms of value in exchange and not value in use. *Equitable Life Assurance Society,* 852 S.W.2d at 380.

Relying on Missouri case law, state tax commission decisions, opinions from other jurisdictions, and texts from the International Association of Assessing Officers and the American Society of Appraisers, Collector contends that the proper method to determine the true value in money of machinery and equipment is to value the assets as part of an entire manufacturing facility. Collector essentially asks us to create a valuation requirement that includes installation, freight, and other costs on all valuations of machinery and equipment for assessment purposes. Upon examination of Collector's authority, however, it is clear that none of the cases or texts support such a requirement, and we decline to impose one.

Collector initially cites *Bussman Division of Cooper Industries/McGraw Hill v. State Tax Commission of Missouri,* 802 S.W.2d 543 (Mo.App.1991). In *Bussman,* the Commission had to decide whether manufacturing dies had a market value for purposes of assessing a manufacturers' tax. The taxpayer argued that because the dies had no value outside their use in the manufacturing plant, their market value was zero. *Id.* at 545. This court held that the Commission correctly assessed the dies to have a market value, taking use into account. In reaching this conclusion, we noted the Commission's finding that there is a market for the dies because of their undisputed status as an integral part of the taxpayer's plant, which could not operate without the dies. *Id.*

Contrary to Collector's characterization, there is no indication in the reasoning or holding of *Bussman* that valuation of manufacturing equipment must always include an in-use component. Instead, we acknowledged the discretion of the Commission "to choose the appropriate method of valuation in a given case and the weight to be accorded the various factors relevant to determination of the market value." *Id.* at 545. Declaring that the Commission did not abuse its discretion in considering the use of the dies for valuation purposes does not equate to requiring such a consideration in all cases involving valuation of manufacturing equipment.

To further support its proposition, Collector cites two tax commission decisions: *BCB Manufacturing USA, Inc. v. Morton,* 1997 Mo. Tax LEXIS 23 (April 10, 1997) and *Doe Run Co. v. Holman,* 1999 Mo. Tax LEXIS 129 (Dec. 23, 1999). Again, however, Collector fails to establish a basis for requiring inclusion of installation, freight, labor and other costs when valuing manufacturing equipment. In *BCB Manufacturing,* although the hearing officer adopted the taxpayer's "Fair Market Value—Installed" valuation method to assess machinery and equipment, the hearing officer specifically stated that he

> recognizes that in a given appeal the evidence may be such that an assumption that the most likely future use of the equipment might not be in its present use, but that it is just as likely that the equipment would not sell as a part of the whole, but would simply sell in liquidation. This, of course, would result in a different method of valuation from that employed by [taxpayer's appraiser] in this appeal. The circumstances of each case will dictate the exact method of valuation employed.

*Id.* at *22. *Doe Run* involved a real estate appraisal rather than a personal property appraisal. There, the hearing officer found that the "subject [real property] is not likely to be purchased on a stand alone basis" before applying a "unit value approach" to value what she described as a

specific unit of the taxpayer's "integrated system." *Id.* at *14. Nothing in either *BCB Manufacturing* or *Doe Run* leads to a conclusion that a fair market value installed method of valuation must be employed when valuing machinery and equipment.

Collector's references to trade organization texts and cases from other jurisdictions similarly provide no authority for imposing a fair market value installed methodology for all valuation of machinery and equipment. Not only do the trade organization texts fail to provide a legal basis for this state to require installation, freight, and other costs to be included in such valuations, they do not advance such a position. *See* APPRAISING MACHINERY AND EQUIPMENT 174 (John Alico, ed., 1989) (summarizing the concepts of value-in-use versus value-in-exchange and requiring justification when an appraiser determines that value-in-use and value-in-exchange are equal in a particular circumstance); INTERNATIONAL ASSOCIATION OF ASSESSING OFFICERS, PROPERTY ASSESSMENT VALUATION 376–77 (2d ed. 1996) (listing factors to consider when deciding whether to apply various concepts of valuation, including both value-in-use and value-in-exchange). As to the cases Collector cites from other jurisdictions, we either decline to follow their reasoning, or recognize that the valuation statutes differ from Missouri's statutes.[2]

---

**2.** *See Flambeau Corp. v. Morgan County Board of Tax Assessors,* 238 Ga.App. 812, 520 S.E.2d 275, 276 (Ct.App.1999) (citing GA.CODE ANN. § 48–5–2(3)A permitting property to be valued as a whole to determine the fair market value of a going concern); *Sorokach v. Trusewich,* 35 N.J.Super. 86, 113 A.2d 194, 197 (Ct.App.Div.1955) (valuation of decedent's heir's interest in partnership as going concern determined by value of property in place); *Boise Cascade Corp. v. Dept. of Revenue,* 12 Or. Tax 263, 268, 1991 WL 434542 (Or. Tax 1991) (citing OR. ADMIN. R. 150–308.205—

D(1)(c) stating that an operating plant or an operating complex shall be considered a going concern, recognizing the value of an assembled group of assets usually exceeds the value of an identical group of assets that are separate or sitting idle); *Lionel Trains, Inc. v. Chesterfield Township,* 224 Mich.App. 350, 568 N.W.2d 685, 686 (Ct.App.1997) (citing Chapter 15 of the Michigan State Tax Commission Manual which requires the taxing authority to multiply the purchase price of personal property by "in-use" multipliers in determining the true cash value of the proper-

We find that the Commission did not abuse its discretion when it found that valuation of machinery and equipment need not include installation, freight, and other costs unless such costs establish a value equivalent to value in exchange, as mandated by section 137.115. Point denied.

In his second point, Collector argues that even if fair market value installed valuation is not required, the Commission erred in declining to utilize the fair market value installed method of valuation given the particular facts and circumstances of this case. Nevertheless, as stated above, proper methods of valuation and assessment are delegated to the Commission, as we are "loathe to substitute [our] judgment for the expertise of the Commission in matters of property tax assessment." *Savage*, 722 S.W.2d at 75. Moreover, in light of our analysis of Collector's third point below, the Commission did not clearly abuse its discretion when it rejected Collector's method of valuation. Collector's second point is denied.

▮▮▮▮ In its third point, Collector argues that Taxpayer's valuation was not supported by competent and substantial evidence and that Taxpayer failed to rebut the presumption of correctness of the Board's assessed valuation. "A presumption exists in favor of the correctness of the valuation of the tax assessor." *Nance v. State Tax Commission of Missouri*, 18 S.W.3d 611, 615 (Mo.App.2000) (quoting *Hermel, Inc. v. State Tax Commission of Missouri*, 564 S.W.2d 888, 894 (Mo. banc 1978)). Therefore, in order to prevail, Taxpayer must present an opinion of market value and then must present substantial and persuasive evidence that the proposed value is indicative of the market

value of the subject property on tax day. *Hermel*, 564 S.W.2d at 897. "Substantial" evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cupples Hesse Corp. v. State Tax Commission*, 329 S.W.2d 696, 702 (Mo.1956). "Persuasive" evidence is that evidence which has sufficient weight and probative value to convince the trier of fact. The persuasiveness of the evidence does not depend on the quantity or amount thereof but on its effect in inducing belief. *Brooks v. General Motors Assembly Division*, 527 S.W.2d 50, 53 (Mo.App.1975).

To support its valuation, Taxpayer presented a 48 page appraisal report accompanied by over 80 pages of exhibits prepared by an appraiser with extensive qualifications in appraising machinery and equipment. The report sets forth in detail a description of every item of property, the condition of each item, and the value approach utilized to establish the true value of each item. Appraiser used the market approach and cost approach to arrive at his opinion of the fair market value of each item of property, depending on the availability of comparable sales data. Both are acceptable methods of determining true value in money. *See Equitable Life Assurance*, 852 S.W.2d at 378.

At the hearing, Appraiser testified with regard to how he performed his appraisal, including four days of on-site inspection at Taxpayer's facility, and an explanation of the documents and resources upon which he relied, such as his depreciation schedule and a database maintained by his company. He stated that there is nothing unusual, custom, or special about the equipment, and that most of it could be sold separately

---

ty); *Maytag v. Partridge*, 210 N.W.2d 584 (Iowa 1973) (citing Iowa Code § 428.22 which requires that machinery used in manufactur-

ing establishments be regarded as real estate for taxation purposes, in which both the land and improvements must be valued as a unit).

and used for other purposes. When asked what he considered to be the highest and best use of the property, an analysis considered by the Commission to be a fundamental element of market value appraisal, *see Doe Run* at *5, he testified that "the highest and best use of a pump is a pump." He explained that valuing the equipment on a piecemeal basis fit with his analysis of highest and best use. In addition to Taxpayer's testimony, Mr. Huether conceded that the property could be sold individually and could be put to other uses. Viewing the facts in the light most favorable to the Commission's decision and disregarding all evidence to the contrary, we find that the Commission's decision is supported by substantial and persuasive evidence. Collector's third point is denied.

Collector argues in its fourth and final point that the Commission erred in excluding various exhibits from the evidence. Collector cites no authority for this point. "In order to preserve an argument for appellate review .... an appellant must cite authority in support of his points relied on, or a rationale must be given explaining why such authority is unavailable. If a point relied on fails to comply with Rule. 84.04(d), nothing is preserved for review." *Johnston v. Johnston,* 952 S.W.2d 385, 386 (Mo.App.1997). Moreover, Collector fails to explain how admission of the excluded evidence would compel a different result. Collector's final point is denied.

The judgment is affirmed.

SHERRI B. SULLIVAN, P.J., and LAWRENCE E. MOONEY, J., concur.