**Steve STACY, Petitioner–Appellant,**

v.

**DEPARTMENT OF SOCIAL SERVICES, DIVISION OF MEDICAL SERVICES, Respondent–Respondent.**

**No. 25876.**

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 29, 2004.

---

1. All statutory references are to RSMo. (1994) unless otherwise indicated.

848

Jeremiah W. (Jay) Nixon, Atty. Gen., David P. Hart, Office of Atty. Gen., Jefferson City, for appellant.

Daniel T. Moore, John M. Albright, Moore, Walsh & Albright LLP, Poplar Bluff, for respondent.

KENNETH W. SHRUM, Judge.

This appeal stems from an effort by Missouri's Department of Social Services ("DSS") to sanction Steve Stacy ("Stacy") for failing to timely supply DSS with professional counseling records relating to his Medicaid clients that he was obligated to keep and produce upon request. DSS sanctioned Stacy by ordering him to return $56,207. Stacy appealed DSS's order to Missouri's Administrative Hearing Commission ("Commission"). After Commission affirmed DSS's decision, Stacy petitioned the Butler County circuit court for review. Except for $3,946.86 (which the court found Stacy owed), the trial court ruled favorably to Stacy. This appeal by DSS followed.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

Stacy is a licensed professional counselor who provided counseling for Medicaid qualified individuals per a written Medicaid provider contract. His contract with DSS provided, *inter alia:*

> "6. All providers are required to maintain fiscal and medical records to fully disclose services rendered to Title XIX Medicaid recipients. These records shall be ... made available on request by an authorized representative of the Department of Social Services.... Failure to submit or failure to retain documentation for all services billed to the Medicaid Program may result in the recovery of payments for Medicaid services...."

In the year 2001, DSS opted to audit Stacy's records to see if he had complied with applicable rules and regulations for Medicaid providers.[2] The audit was conducted by DSS employee, Scott Elwood ("Elwood"). It proceeded as follows.

Elwood contacted Stacy in person, handed him a letter, and told Stacy he was there to "audit his records." Stacy answered that his records "were not available" because they were in Kennett, Missouri. Elwood answered, "just send them to me."

Stacy responded by sending Elwood his "progress notes" for Medicaid clients seen during the audit period. He limited his response to progress notes only because these notes were the focus of an earlier audit.

---

1. Stacy has not appealed that part of the judgment that found DSS was entitled to recoup $3,946.86 from Stacy.

2. He was selected for auditing because he was on the "exception report," i.e., he ranked above his peers in the amount of time he billed for services allegedly rendered to Medicaid recipients.

Upon receipt of the progress notes, Elwood could not "find any start stop times on the entries." Without "time spent with patient" information, Elwood could not resolve whether Stacy's billings for each client visit were correct. Accordingly, he contacted Stacy a second time.

At their second meeting, Elwood asked Stacy if "he had any calendar, appointment books or anything of when he's seeing these kids." Stacy answered, "No." Thereon, Elwood asked Stacy to sign a "Document Disclosure Statement," which he did, wherein the following is found:

"I have received a list of recipients which are requested for review. I have been requested to disclose all medical record documentation, in its entirety, for services billed."

"I hereby state that I have produced and disclosed all medical records, documents, calenders [sic], appointment books, logs which would reflect the amount of time I spent in delivery of services billed in their entirely [sic], to the above State agency as requested."

With only progress notes in hand, Elwood reviewed them and concluded Stacy had not complied with Medicaid regulations on record keeping and record production. Because of the noncompliance, DSS ruled Stacy should be sanctioned by ordering recoupment from Stacy of sums paid to him by DSS.

In so ruling, DSS found three deficiencies in the records produced. Category "A" deficiencies were those in which Stacy's records lacked a "start or stop time" for the services billed. For this, DSS demanded $44,367.18 reimbursement. Category "B" concerned records that did not reveal what type of therapy was provided. For this, DSS ordered a $3,946.86 reimbursement. Finally, Category "C" were

instances where Elwood found "no documentation at all in [Stacy's] records for those particular dates of service." The Category "C" reimbursement demand totaled $7,893.86.

Once the audit was completed, DSS notified Stacy of its findings and demand for reimbursement. Thereon, Stacy tendered an additional record to Elwood for his consideration. This previously undisclosed document contained "start and stop" times for each disallowed service. Elwood refused to accept or consider the document, however, because it was submitted after the audit period. This was in accord with DSS's policy that it would not consider records tendered after the audit results were announced "because they [the records] could be reconstructed."

Stacy timely appealed to the Commission. Commission held an evidentiary hearing, where it found for DSS. In doing so, Commission found that Elwood "asked for all records pertaining to Stacy's clients, that Stacy did not provide the billing information at that time, and that he cannot supplement the record at a later time." The Commission ruled that Stacy's failure to produce mandated records during the audit period violated relevant regulations, including 13 CSR 70–3.030(2)(A)(4).[3] It then cited additional regulations to affirm DSS's decision ordering Stacy to repay $56,207.80.

After Stacy appealed Commission's decision to the Butler County circuit court, it reversed Commission's decision, except the Category "B" reimbursement ordered by Commission. This appeal by DSS followed.

### STANDARD OF REVIEW

On appeal, this court reviews the Commission's decision—not the judgment of

---

**3.** All references to regulations are to 13 CSR 70, Chapter 3 (2001).

the trial court—to determine if the agency action is, *inter alia,* unsupported by competent and substantial evidence upon the whole record, or is "arbitrary, capricious or unreasonable." §§ 536.140.2 and 621.145 (RSMo 2000); *State Bd. of Reg. Healing Arts v. McDonagh,* 123 S.W.3d 146, 152 (Mo.banc 2003); *Americare Sys., Inc. v. Mo. Dept. of Soc. Services,* 808 S.W.2d 417, 419 (Mo.App.1991).

■ A party aggrieved by an administrative agency decision has the burden of persuasion upon appeal to this court. We presume that the Commission's decision is valid, and the burden is the attacking party's to overcome. *Hernandez v. State Brd. of Reg. for Healing Arts,* 936 S.W.2d 894, 900[5] (Mo.App.1997). That burden has been described as "heavy." *State ex rel. Sure–Way Transp., Inc. v. Div. of Transp. Dept. of Econ. Dev., State of Mo.,* 836 S.W.2d 23, 25[2] (Mo.App.1992).

## APPLICABLE LAW AND REGULATIONS

Medicaid service providers such as Stacy must make available and disclose to DSS all records "relating to Medicaid recipients" served by the provider. 13 CSR 70–3.030(2)(A)(4). "Failure to make these records available on a timely basis . . ., or failure to provide copies as requested, or failure to keep and make available adequate records which adequately document the services and payments shall constitute a violation of this section and shall be a reason for sanction." *Id.*

The term "records" is defined by regulation to mean "books, papers, journals . . . and any other recordings of data or information made by or caused to be made by a provider *relating in any way* to services

provided to Medicaid recipients and *payments charged or received.*" 13 CSR 70–3.030(1)(J) (emphasis supplied).

"Adequate documentation means documentation from which services rendered and the *amount of reimbursement received* by a provider *can be readily* discerned and *verified with reasonable certainty.*" 13 CSR 70–3.030(1)(A) (emphasis supplied).

Monies paid a provider for services not verified by adequate records shall constitute an overpayment. 13 CSR 70–3.130(2)(C)(4). By definition, "overpayment" is "an amount of money paid to a provider by the Medicaid agency to which s/he was not entitled by reason of improper billing [or] lack of verification. . . ." 13 CSR 70–3.130(1)(E).

## DISCUSSION AND DECISION

Because we review Commission's decision (which was adverse to Stacy), it is Stacy's appellate brief that delineates the issues this court must resolve. *See* Rule 84.05(e).[4]

■ Stacy's first point maintains the Commission erred when it affirmed DSS's finding of entitlement to reimbursement for Category "A" billings. He structures his point as follows:

> "[C]ommission erred in ordering . . . recoupment of . . . $44,316.18 because agency actions must be supported by competent and substantial evidence on the whole recorded [sic], based on lawful procedures avoiding arbitrary, capricious and unreasonable results and in this case [Stacy] kept an accurate record of the start and stop times of the session

---

**4.** All rule references are to Supreme Court Rules (2004), unless otherwise indicated. Rule 84.05(e) provides that when, as here, a circuit court reverses an administrative agency decision and this court reviews the agency decision—not the circuit court's judgment—the party aggrieved by the agency decision must file the first, i.e., the appellant's brief.

and when [DSS] specifically requested the [start/stop] records [Stacy] produced the same thus, [Stacy] was in compliance."

As we understand it, Stacy is making a two-fold claim. First, he asserts that when Elwood first announced his intent to audit records, he (Stacy) had records of start/stop times of his consultations with Medicaid clients, and he could have produced those records had Elwood explicitly asked for them, but Elwood never told Stacy that start/stop time records were part of the audit. Stacy asserts he initially furnished Elwood with what was asked for, i.e., progress notes. Later, when Elwood asked Stacy for "a calendar, appointment books or anything of when he's seeing these kids," Stacy still did not understand that start/stop records were at issue; consequently, he answered the second inquiry in the "negative." Stacy claims that, as Elwood's second visit ended, he (Stacy) signed the document disclaimer statement because he did not keep calendars or appointment books; that he simply did not understand Elwood wanted to audit start/stop time records. Stacy maintains, therefore, that his act of furnishing progress notes plus his recordation of start/stop times (even though the latter records were not disclosed during the audit period) proved his compliance with regulations, and that Commission's decision to the contrary was not supported by competent and substantial evidence.

The initial phase of Stacy's argument is premised on his contention that Elwood asked only for progress notes at their first meeting. The Commission found otherwise, in that when Elwood initially met with Stacy, he (Elwood) requested Stacy's "records." Commission's findings on this issue are supported by substantial evidence.[5] Specifically, Elwood testified that when he and Stacy first met, he handed Stacy a letter and told Stacy he was there to conduct an audit and asked for "his records." Neither Elwood nor Stacy testified that "progress notes" were the only records mentioned during their first meeting. Reasonable minds could accept Elwood's testimony as adequate to support the finding that it was "records" that he requested. Consequently, Commission's rulings are supported by "substantial" evidence," *Daly*, 77 S.W.3d at 651, and Stacy's premise that only progress notes were requested is faulty.

Second, although Stacy has always insisted he never understood Elwood wanted start/stop records until after the audit was over, the Commission disposed of that argument by noting:

"Stacy knew . . . he was being audited to check the accuracy of his Medicaid payments and his compliance with applicable laws and rules. This knowledge combined with the request for records should have alerted him that the time he spent with each client—information he used in billing Medicaid—would be an important part of that client's records."

Ample evidence exists to support that conclusion.

First, there is the provider contract by which Stacy agreed to "maintain fiscal and medical records to fully disclose services rendered to Title XIX Medicaid recipients[ ]" and produce those records when DSS requested them. Second, there was evidence that DSS furnished Stacy a provider manual and circulated medical bulletins that instructed him regarding documentation and recorded the meaning of

5. Substantial evidence in the administrative law context has been defined as any relevant evidence that reasonable minds might accept as adequate to support a conclusion. *Daly v. P.D. George Co.*, 77 S.W.3d 645, 651[9] (Mo. App.2002).

those terms. Third, after Stacy provided his progress notes (which had no time-expended recordation or start/stop times), Elwood alerted Stacy that his progress notes were insufficient by asking him for additional documentation of any "calendar, appointment books *or anything*" that documented dates and times he saw Medicaid recipients. Finally, there is the "Documentation Disclosure Statement" signed by Stacy, in which he represented he had produced and disclosed all "logs which would reflect the amount of time I spent in delivery of services billed." This evidence, plus the fact that Elwood's request was for "records" (without restriction as to scope) and testimony that Stacy's pay was based on time spent with each client, supports Commission's ruling that Elwood's request encompassed all records relating to Stacy's clients, including start/stop times for each consultation.

■ At the Commission hearing, Stacy admitted his progress notes had no "start and stop time" information. Moreover, review of his progress notes shows they are devoid of any information, however characterized, from which the amount of time Stacy spent with each client could be calculated. Without such time information, neither DSS, nor the Commission, nor this court could verify with reasonable certainty what reimbursement Stacy was entitled to receive. *See* 13 CSR 70–3.030(1)(A) (definition of adequate documentation). Accordingly, reasonable minds could accept this proof of nonproduction of essential documents as substantial evidence of Stacy's noncompliance with relevant regulations and, thus, warrant DSS's imposing the overpayment sanction. *See* 13 CSR 70–3.030(2)(A)(4). We reject Stacy's argument to the contrary.

■ The second part of Stacy's Point I argument reprises his claim that DSS never "plainly and concisely" told Stacy what

records it wanted from him. Stacy charges that the record, when viewed as a whole, shows a "deliberate scheme" by DSS to "hoodwink" him. With that as his premise, Stacy characterizes Commission's "$44,000.00 sanction for not producing records never requested" as an "arbitrary, capricious, or unreasonable" action that should be corrected by judicial review per section 536.140.2(6) (RSMo 2000). He insists that, on this record, failure to give him "even one opportunity to supply the missing information, which was readily available had it been asked for" was fundamentally unfair; that reversal should occur because of Commission's and DSS's "arbitrary and capricious" rejection of the belated tender of start/stop records.

■ "The finding of an administrative body is arbitrary and unreasonable where it is not based on substantial evidence." *Edmonds v. McNeal*, 596 S.W.2d 403, 407[3] (Mo.banc 1980).

> "Whether an action is arbitrary focuses on whether an agency had a rational basis for its decision. Capriciousness concerns whether the agency's action was whimsical, impulsive, or unpredictable. To meet basic standards of due process and to avoid being arbitrary, unreasonable, or capricious, an agency's decision must be made using some[thing other] than mere surmise, guesswork, or 'gut feeling.' An agency must not act in a totally subjective manner without any guidelines or criteria."

*Mo. Nat'l Educ. Ass'n v. Mo. State Bd. of Educ.*, 34 S.W.3d 266, 281 (Mo.App.2000) (citations omitted).

Measured by these principles, the second part of Stacy's argument also fails. Although complete candor by Elwood might have included an explicit request for "time spent with client" records, we have already found there was substantial evi-

dence to support Commission's conclusion that Stacy should have known the "time he spent with each client—information he used in billing Medicaid—would be an important part of the client's records[ ]" and, thus, "was part of what Elwood was looking for." Moreover, DSS (via Elwood's testimony) presented Commission with a rational basis for the decision not to accept Stacy's belated tender of records, namely the general concern that records furnished outside the audit period might "be reconstructed," or created after audit results were announced. Stacy produced no proof that DSS's refusal to consider records produced after the audit period was "whimsical, impulsive or unpredictable." Likewise, he presented nothing from which it could be found or inferred that DSS's refusal to consider his tender of documents stemmed from "surmise, guesswork or 'gut feeling' " about belated creation of records or that it was part of a "deliberate scheme" to "hoodwink" him. To the contrary, the record supports a finding that an "objective standard" existed, as DSS consistently refused to consider records produced after audit completion.

In sum, Stacy has not carried his heavy burden of showing that Commission's decision was unsupported by substantial evidence or that DSS and Commission acted arbitrarily, unreasonably, or capriciously in refusing to consider records presented by Stacy after DSS's audit was complete. Commission's order affirming DSS's action in ordering repayment by Stacy of $44,316.18 because of his failure to timely provide adequate documentation of time spent with clients will be affirmed. Stacy's first point is denied.

■ Stacy's second point on appeal maintains that Commission erred when it ordered repayment of "$7,893.76 under the claim of a lack of documentation." Continuing, Point II asserts this was error "because there was no evidence to support the decision . . . in that [DSS] offered no evidence from any witness that the progress notes did not, in fact, distinguish family counseling from individual counseling." The argument beneath Point II in Stacy's brief has only seven sentences of "argument" and is wholly conclusory in nature. More than that, the seven sentences of "argument" bear no relationship to the Commission error about which Stacy complains in his second point relied on.

To explain this, we revisit the Category "B" deficiency. Specifically, Category "B" listed those instances where Stacy's progress notes did not reveal the type of therapy provided, either family or individual counseling. This resulted in a $3,946.86 overpayment demand.

The Category "C" deficiencies were different. Specifically, the Category "C" deficiencies were those instances where Stacy's progress notes did not "provide any documentation for [certain described] services . . . billed to Medicaid." For this problem, DSS ordered Stacy to repay $7,893.76. In describing Category C record deficiencies, Commission noted that "if there is no record of service, this is clearly inadequate documentation."

Stacy's second point charges the Commission erred when it ordered repayment for Category "C" deficiencies, i.e., no documentation whatsoever. However, in asserting why this was error in the context of the case—a briefing requirement per Rule 84.04(d)(1)(C)—Stacy's given reasons relate exclusively to the Category "B" part of Commission's order, i.e., records of the service exist but are not adequate to show whether the therapy provided was for an individual or family.

■ Rule 84.04(d) mandates that a point relied on "state why the ruling was erroneous and wherein the evidence, lack thereof,

or other matters, supports the position the party asserts the [Commission] should have taken." *In re Marriage of Hayes,* 12 S.W.3d 767, 769 (Mo.App.2000). Stacy has violated this fundamental precept of acceptable briefing by citing evidence that could only relate to a claim of Commission error in connection with Category "B" record deficiencies, when his point charges Commission with a different error, namely ordering recoupment for Category "C" record deficiencies ($7,893.76 under the claim of a lack of documentation). When, as here, a claim of error is made in a point relied on, but not developed in the argument part of the brief, it is deemed abandoned. *City of Rolla v. Armaly,* 985 S.W.2d 419, 426–27[13] (Mo.App.1999).

We also note that Rule 84.04(e) limits the argument under each point to those asserted in the point relied on. Accordingly, appellate courts decide only those questions set out in the point, *Boatmen's Bank v. Foster,* 878 S.W.2d 506, 509[5] n. 4 (Mo.App.1994), and decline to review arguments or decide issues put forth in the argument part of a brief that are not fairly encompassed within the point. *Mullenix–St. Charles Prop. v. City of St. Charles,* 983 S.W.2d 550, 559[17] (Mo.App.1998). An appellant must develop in the argument section of his or her brief the same claim of error made in the point relied, and the failure to support or develop claims of error in the argument portion of the brief amounts to an abandonment of that point of error. *Luft v. Schoenhoff,* 935 S.W.2d 685, 687 (Mo.App.1996).

These precepts track Rule 84.13(a) which provides, "[A]llegations of error not briefed or not properly briefed shall not be considered in any civil appeal." For the reasons stated, Stacy's second point is not properly briefed and we deem it abandoned. Point dismissed.

We reverse that part of the circuit court judgment which set aside the Administrative Hearing Commission's order that authorized the DSS to recoup from Stacy the sum of $44,367.18 for Category "A" record deficiencies and remand with directions to the trial court to reinstate the Administrative Hearing Commission's order with respect to the $44,367.18 recoupment amount. We also reverse that part of the circuit court's judgment which set aside the Administrative Hearing Commission's order that authorized DSS to recoup from Stacy the sum $7,893.76 for Category "C" record deficiencies and remand with directions to the trial court to reinstate the Administrative Hearing Commission's order with respect to the $7,893.76 recoupment amount. The judgment of the trial court is affirmed to the extent that it upheld the decision of the Administrative Hearing Commission with respect to the $3,946.86 recoupment amount.

PARRISH, P.J., and BATES, C.J., concur.